IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JOE DETTLING and ROBERT CABOS,    ) Civ. No. 11-00374 ACK-KSC
                                  )
          Plaintiffs,             )
                                  )
     v.                           )
                                  )
UNITED STATES OF AMERICA,         )
NATIONAL OCEANIC & ATMOSPHERIC    )
ADMINISTRATION, U.S. DEPARTMENT   )
OF COMMERCE, and DOE DEFENDANTS   )
1-10,                             )
                                  )
          Defendants.             )
_____)

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

          For the following reasons, the Court hereby DISMISSES
Plaintiffs' Complaint in its entirety with partial leave to
amend, as set out in detail below.

PROCEDURAL BACKGROUND

          Plaintiffs Joe Dettling and Robert Cabos filed their
original complaint in this action on June 14, 2011. (Doc. No. 1.)
On August 9, 2012, they filed the First Amended Complaint, the
operative complaint ("Compl."). (Doc. No. 35.) The Complaint
names as defendants the United States and the U.S. Department of
Commerce, acting through co-defendant the National Oceanic
Atmospheric Administration (together, "NOAA"). (See id.)

          NOAA filed a Motion To Dismiss the First Amended
Complaint on September 21, 2012, arguing that the Court lacked
subject-matter jurisdiction over Plaintiffs' claims and that
Plaintiffs had failed to state their claims. (Doc. No. 40

("Mot.").) On April 25, 2013, Plaintiffs filed an Opposition. (Doc. No. 60.) NOAA filed a reply on May 2, 2013. (Doc. No. 61.) After reviewing the parties briefs, the Court directed the parties to file supplemental briefs discussing whether the Court had subject-matter jurisdiction over Plaintiffs' claims. (Doc. No. 63.) The parties filed their supplemental briefs on May 24, 2013. (Doc. Nos. 65 ("NOAA Supp. Bf.") & 66 ("Pl. Supp. Bf.").) A hearing on the Motion was held on May 30, 2013.[1]

## FACTUAL BACKGROUND & STATUTORY SCHEME[2]

This case concerns fishing rights in two marine national monuments located near Hawaii. Dettling fished in the monument areas in 1999, and for many years beforehand, on a state-issued fishing permit. (Compl. ¶¶ 15, 50.) Cabos also fished in the monument areas, during an unspecified period. (See Id. ¶ 84.)

## I.   Executive Orders 13178 & 13196

On December 4, 2000, President William J. Clinton issued Executive Order 13178, establishing the Northwestern Hawaiian Islands Coral Reef Ecosystem Reserve (the "Reserve"). See Exec. Order No. 13,178, 65 Fed. Reg. 76,903 (Dec. 7, 2000) (Mot. Ex. A). The Reserve included all submerged lands and waters

---

[1] A February 2013 hearing date was continued by three months pursuant to a joint motion by the parties. (See Doc. No. 57.)

[2] The facts as recited in this order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

of the Northwestern Hawaiian Islands, extending "50 [nautical miles] from the approximate center geographical positions of [the islands]." Id. at 76,906-07.

A few weeks later, President Clinton modified Executive Order 13178 via Executive Order 13196, which was issued, in part, to "to address concerns raised, particularly regarding commercial and recreational fishing within the Reserve." 66 Fed. Reg. 7395 (Jan. 18, 2001) (Mot. Ex. B). Together, the Executive Orders state:

> (a)(1) *Commercial Fishing.* All currently existing commercial Federal fishing permits and current levels of fishing effort and take, as determined by the Secretary and pursuant to regulations in effect on the date of this order, shall be capped as follows:
>
> ...
>
> (C)(2) All other commercial fishing [other than bottomfishing] - the annual aggregate level shall be the permittee's individual take in the year preceding December 4, 2000, as determined by the Secretary [of Commerce].
>
> ...
>
> (F) Trolling for pelagic species shall be capped based on reported landings for the year preceding December 4, 2000.

Id. at 7396; 65 Fed. Reg. at 76,907. Each Executive Order also states:

> *Judicial Review.* This order does not create any right or benefit, substantive or procedural, enforceable in law or equity by a party against the United States, its agencies, its officers, or any person.

65 Fed. Reg. at 76,910; 66 Fed. Reg. at 7397.

3

At a 2002 meeting in Honolulu, Dettling provided NOAA with his 1999 fishing log and stated his claim that he had trolled for pelagic species in the waters now designated as the Reserve in the year preceding December 4, 2000. (See Compl. ¶¶ 22-24.) He argued that under the Executive Orders he was entitled to fish in the Reserve up to the amount he had caught in 2000. (Id.) On April 20, 2006, at another meeting, Dettling again provided proof of his claim. (See id. at 28-29.) NOAA never issued any permits for pelagic trolling in the Reserve. (Id. ¶ 37.)

## II.  Proclamation 8031

On June 15, 2006, President George H.W. Bush issued Proclamation 8031, which established the waters previously designated as the Reserve as the new Northwestern Hawaiian Islands National Monument[3/] (the "NWHI Monument"). See 71 Fed. Reg. 36,443, 36,453-54 (June 26, 2006) (Mot. Ex. C). Proclamation 8031 prohibited virtually all commercial and recreational fishing within the bounds of the NWHI Monument, except for five additional years - until 2011 - of certain types of fishing. Id. at 36,447. Specifically, Proclamation 8031 stated:

> Commercial fishing for bottomfish and
> associated pelagic species may continue
> within the monument for not longer than
> 5 years from the date of this proclamation
> provided that:

---

[3/] The Monument's name was later changed to the Papahanaumokuakea Marine National Monument. Proclamation No. 8112, 72 Fed. Reg. 10,031 (March 6, 2007). Since both parties refer to the Monument by its former name, however, for clarity's sake the Court will do the same.

> (i) The fishing is conducted in accordance
> with a valid commercial bottomfish permit
> issued by NOAA; and
>
> (ii) Such permit is in effect on the date of
> this proclamation and is subsequently renewed
> pursuant to NOAA regulations . . . as
> necessary.

Id. Unlike the two Executive Orders discussed above and Proclamation 8336 (discussed below), Proclamation 8031 does not contain a provision barring judicial review.

On July 19, 2006, Dettling asked NOAA to clarify whether he was allowed to continue pelagic trolling in the newly-established NWHI Monument. (Compl. ¶ 11, 49.) On August 3, 2006, NOAA responded that Dettling was not allowed to fish in the NWHI Monument on his state fishing permit, and that he would be arrested if he tried to do so. (Id. ¶¶ 11, 50-51.) On September 17, 2006, Dettling filed a claim for compensation premised on NOAA's closure of his traditional fishing grounds. (Id. ¶¶ 11, 54.) On April 4, 2007, NOAA apparently changed course and informed Dettling that he could continue commercial fishing in the NWHI Monument and that his claim was therefore unwarranted. (Id. ¶¶ 11, 55-57.) When Dettling later gave notice of a planned fishing trip, however, NOAA threatened to have him arrested if he went through with the fishing trip. (Id. ¶¶ 11, 58-59.)

Dettling continued to follow up with NOAA periodically regarding a federal permit to fish. (Id. ¶ 41.) NOAA assured Dettling that it was working on getting him a federal permit to fish in the NWHI Monument. (Id. ¶ 42.)

III. **Proclamation 8336**

On January 6, 2009, President Bush issued Proclamation 8336, which established the Pacific Remote Islands Marine National Monument (the "PRIA Monument"). See 74 Fed. Reg. 1565 (Jan. 12, 2009) (Mot. Ex. E). The boundaries of the PRIA Monument are "the waters and submerged and emergent lands of the Pacific Remote Islands . . . which lie approximately 50 nautical miles from the mean low water lines of [the Pacific Remote Islands]." Id. at 1567. The PRIA Monument thus is near to but does not overlap with the NWHI Monument.[4/]

Proclamation 8336 prohibits all commercial fishing within the boundaries of the PRIA Monument. Id. at 1568. Proclamation 8336, like the two Executive Orders, contains a provision barring judicial review, which states: "This proclamation is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity, by any party against the United States, its agencies, instrumentalities, or entities, its officers, employees, agents, or any other person." Id. at 1570.

IV. **Disbursement of Funds**

According to Plaintiffs, in 2008, Congress had designated six million dollars to compensate displaced fishermen, and Plaintiffs were eligible to receive compensation. (Compl. ¶¶ 65, 78-79.) NOAA disbursed the funds in May 2010. (Id. ¶¶ 78,

---

[4/] See, e.g., NOAA Marine National Monument Program Map, www.fpir.noaa.gov/Library/MNM/eez_monument_4_6_2011.pdf (last visited May 24, 2013).

81.) Federally-permitted lobster fishermen displaced by Proclamations 8031 and 8336 received money, but Dettling and Cabos did not. (<u>Id.</u> ¶¶ 78-79.)

**V.    Permits**

NOAA issued Dettling a federal permit for pelagic fishing in the PRIA and NWHI Monument waters in 2010, 2011, and 2012 through May 2013. (<u>Id.</u> ¶ 71.) Nonetheless, whenever Dettling gave notice that he intended to fish there, NOAA threatened to have him arrested. (<u>Id.</u> ¶ 72.)

**VI.   Administrative Claim**

On January 7, 2011, Dettling and Cabos filed claims for damages with NOAA. (<u>Id.</u> ¶ 12; <u>see</u> Mot. Exs. H & I.) On February 14, 2011, Dettling filed another separate claim. (Compl. ¶ 12; <u>see</u> Mot. Ex. J.) On February 24, 2011, Dettling and Cabos received a letter from the Department of Commerce denying their claim. (Compl. ¶ 12; <u>see</u> Mot. Ex. K.)

**STANDARD**

**I.    Motion To Dismiss Under Rule 12(b)(1)**

A court's subject matter jurisdiction may be challenged under Federal Rule of Civil Procedure ("Rule") 12(b)(1). Such challenges may be either "facial" or "factual." <u>Wolfe v. Strankman</u>, 392 F.3d 358, 362 (9th Cir. 2004).

In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." <u>Id.</u> (quoting <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004)). When

7

opposing a facial attack on subject matter jurisdiction, the nonmoving party is not required to provide evidence outside the pleadings. Wolfe, 392 F.3d at 362; see Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009) (treating defendant's challenge to subject matter jurisdiction as facial because defendant "introduced no evidence contesting any of the allegations" of the complaint). In deciding a facial Rule 12(b)(6) motion, the court must assume the plaintiff's allegations in the complaint to be true and draw all reasonable inferences in his favor. Wolfe, 392 F.3d at 362 (citations omitted).

By contrast, in a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. at 362 (quoting Safe Air, 373 F.3d at 1039). The moving party may bring a factual challenge to the court's subject matter jurisdiction by submitting affidavits or any other evidence properly before the court. The nonmoving party must then "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009) (citation omitted). In these circumstances, the court may look beyond the complaint without having to convert the motion into one for summary judgment. U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1200 n.2 (9th Cir. 2009). When deciding a factual challenge to the court's subject matter

jurisdiction, the court "need not presume the truthfulness of the plaintiffs' allegations." Id.

In this case, NOAA brings a factual challenge to the Court's subject-matter jurisdiction, and presents declarations from three NOAA and Department of Commerce officials, along with various exhibits. (See Doc. No. 40.)

## II.   Motion To Dismiss Under Rule 12(b)(6)

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011).

On a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party. Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012) (citation omitted). The Court may not dismiss a "complaint containing allegations that, if proven, present a winning case . . . no matter how unlikely such winning outcome may appear to the district court." Balderas v. Countrywide Bank, N.A., 664 F.3d 787, 791 (9th Cir. 2011).

Nonetheless, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011)

(citations omitted). "[O]nly pleaded facts, as opposed to legal conclusions, are entitled to assumption of the truth." United States v. Corinthian Colls., 655 F.3d 984, 991 (9th Cir. 2011) (citation omitted). A "formulaic recitation of the elements of a cause of action" will not defeat a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). The complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556-57). Moreover, the Court need not accept as true allegations that contradict the complaint's exhibits, documents incorporated by reference, or matters properly subject to judicial notice. Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 550, 588 (9th Cir. 2008); Sprewell v. Golden State Warriors, 255 F.3d 979, 988 (9th Cir. 2001).

        The Court should grant leave to amend "even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts." OSU Student Alliance v. Ray, 699 F.3d 1053, 1079 (9th Cir. 2012). Leave to amend "is properly denied, however, if

10

amendment would be futile." <u>Carrico v. City & County of S.F.</u>, 656 F.3d 1002, 1008 (9th Cir. 2011).

### DISCUSSION

Dettling and Cabos bring three claims under the Federal Tort Claims Act: (1) negligence based on federal employees' failure to follow regulations concerning governmental compensation for displaced fisherman; (2) negligence based on NOAA's negligent performance of "an operational tasks [sic]"; and (3) intentional infliction of emotional distress, based on the threats to arrest Dettling. (Compl. ¶¶ 6-8.) Dettling and Cabos also bring two claims under the Administrative Procedure Act: (1) arbitrary and capricious abuse of administrative discretion under Executive Order 13196, Proclamation 8031, and Proclamation 8336; and (2) procedural violations in the adoption of NOAA's regulations or other actions. (<u>Id.</u> ¶¶ 9-10.)

### I.   **Motion To Strike**

At the hearing on NOAA's Motion To Dismiss, Plaintiffs moved to strike the portions of NOAA's supplemental brief that did not address the language in the Executive Orders and Proclamation 8336 barring judicial review. Plaintiffs pointed to, for example, NOAA's lengthy arguments regarding the "discretionary function" exception to the FTCA. (<u>See</u> NOAA Supp. Bf. at 5-9.) The Court agrees with Plaintiffs that NOAA's supplemental brief strayed well beyond the Court's instructions (<u>see</u> Doc. No. 63); although the Court notes that NOAA had already raised the discretionary function analysis in its earlier briefs

11

(see Mot. at 26-27; Reply at 10-12). The Court denies Plaintiffs'
Motion To Strike but will not rely on the extraneous arguments
contained in NOAA's supplemental brief. Counsel for NOAA is
cautioned to obey the Court's explicit instructions going
forward.

 The Court now turns to NOAA's Motion To Dismiss.

## II. Claims by Plaintiff Cabos

 As a preliminary matter, the vast majority of the
lengthy Complaint deals with Dettling. The few allegations
concerning Cabos – which are mostly conclusory - state as
follows:

 The area NOAA claims regulatory authority over under
Proclamations 8031 and 8336 is Cabos's traditional fishing
grounds, in which, "during the relevant periods," he conducted
commercial mid-water fishing, pelagic trolling, and lobster
fishing. (Compl. ¶¶ 82, 84, 90.) Cabos was "severely harmed" by
NOAA's interpretation and application of Proclamations 8031 and
8336. (Id. 85.) Cabos was "eligible" to receive funds designated
by Congress in 2008 to reimburse displaced fishermen, but did not
receive any. (Id. ¶ 78-79.) At some point, NOAA told Cabos that
he had been accidentally excluded from the disbursement and that
it would seek additional funds to compensate him. (Id. ¶¶ 92-93.)
NOAA's failure to compensate Cabos was based on NOAA's "blatant
dislike" of Cabos. (Id. ¶ 76.) Cabos filed a claim with NOAA on
January 7, 2011, asserting that he had been wrongly excluded from
the reimbursement for displaced fishermen. (Id. ¶ 12, 86.) He

received a final denial of his claim on February 24, 2011. (<u>Id.</u> ¶ 95-96.)

As the above account shows, the Complaint presents no facts relating to Cabos that would support any claim from Cabos other than those based on NOAA's failure to give him rightfully-due compensation. If Cabos participates in any future amended complaint, that complaint must contain factual allegations - not mere legal conclusions - that show why Cabos is entitled to relief on <u>each</u> claim which he brings.

## III. <u>Claims Under the Federal Tort Claims Act</u>

Plaintiffs' tort claims are brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674. The FTCA provides liability only in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b). Thus, to bring an FTCA claim, a plaintiff must show the same elements that state law requires for the tort cause of action. <u>See</u> <u>Wright v. United States</u>, 719 F.2d 1032, 1034 (9th Cir. 1983), <u>abrogated on other grounds as stated in</u> <u>Gasho v. United States</u>, 39 F.3d 1420, 1435 (9th Cir. 1994).

### A.   <u>Negligence Based on Failure To Disburse Governmental Compensation</u>

The elements of a negligence claim under Hawaii law are: (1) duty; (2) breach of duty; (3) causation; and (4) damages. <u>Cho v. State</u>, 168 P.3d 17, 23 n.11 (Haw. 2007).

Plaintiffs' first negligence claim concerns governmental compensation allegedly given to lobster fishermen

13

but not given to Plaintiffs, even though they were eligible for it. (<u>See</u> Compl. ¶¶ 12, 65, 74-76, 78-81, 86-95.) These allegations appear to refer to approximately $6.7 million in appropriated funds which was designated by Congress in a 2008 appropriations act "to provide compensation to fishery participants who will be displaced by the 2011 fishery closure resulting from the creation" of the NWHI Monument. Consolidated Appropriations Act of 2008, Pub. L. No. 110-161, 121 Stat. 1844 (2007) (Mot. Ex. D).

The compensation statute defines eligible participants as "those individuals holding commercial Federal fishing permits for either lobster or bottomfish in the designated waters within" the NWHI Monument. <u>See</u> <u>id.</u> Plaintiffs conclusorily assert that they were eligible for federal compensation. (<u>E.g.</u>, Compl. ¶ 79.) Nevertheless, the Court is not required to credit legal conclusions in a complaint that are not supported by the complaint's factual allegations. <u>Iqbal</u>, 556 U.S. at 678 (discussing <u>Twombly</u>, 550 U.S. at 555). Plaintiffs plead that their State fishing logs prove their eligibility (<u>id.</u> ¶ 91), but the compensation statute says nothing about fishing logs. Plaintiffs do not plead that they held federal fishing permits on the date the compensation statute was enacted; indeed, they plead that NOAA had not issued federal fishing permits at that time. (Compl. ¶ 37.) In other words, the facts that they plead appear to show that they were <u>not</u> eligible for compensation under the statute.

If Plaintiffs were referring to some compensation scheme for displaced fishermen other than the one described above, they have offered no factual allegations that would support such a claim. Again, the Court is not required to accept Plaintiffs' legal conclusion that they were "eligible" for some unspecified compensation. Iqbal, 556 U.S. at 678. The federal pleading standards require more.  Since Plaintiffs have not pled facts showing that they were entitled to compensation, they have failed to plead a claim that they were wrongfully denied that compensation.

### B. Negligence Based on Performance of an "Operational Task"

Plaintiffs fail to specify exactly what "operational tasks" they base this claim upon. The Court will therefore examine the various categories of operational task described in the Complaint.

#### 1. Subject Matter Jurisdiction Under Executive Orders and Proclamation 8336

Plaintiffs seem to aim to state a negligence claim at least in part on NOAA's actions under Executive Orders 13178, 13196, and Proclamation 8336. These authorities all contain provisions, however, explicitly stating that they do not "create any right or benefit, substantive or procedural, enforceable in law or equity" against the United States, its agencies, its officers, or any other person. 65 Fed. Reg. at 76,910; 66 Fed. Reg. at 7397; 74 Fed. Reg. at 1570.

The above language clearly demonstrates that Plaintiffs do not have standing to pursue their claims under Executive Orders 13178 and 13196. The first element of federal standing is that "the plaintiff must have suffered an 'injury in fact' - an invasion of a legally protected interest." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (emphasis added). Here, Plaintiffs cannot show a legally protected interest. Plaintiffs' claims under the Executive Orders appear to be premised on the theory that the Executive Orders gave Plaintiffs a right to fish in the Reserve based on their reported landings for the calendar year before the creation of the Reserve, and that NOAA wrongfully failed to issue them the fishing permits they were therefore entitled to. (See Compl. ¶¶ 22-24, 28-29.) The Executive Orders that created this cap system, however, explicitly state that they create no legally enforceable right or benefit. 65 Fed. Reg. at 76,910; 66 Fed. Reg. at 7397. Thus, Plaintiffs had no legal right to fish in the Reserve or to receive permits, and therefore suffered no injury in fact when NOAA prevented them from fishing in the Reserve and failed to issue them permits.

Moreover, the language in Executive Orders 13178 and 13196 and Proclamation 8336 appears to explicitly deny Plaintiffs a private right of action. No federal court has analyzed whether the above language in these specific executive orders and proclamation denies potential plaintiffs a private right of action. Similar or identical language is used fairly frequently in executive-branch orders and regulations, however, and has

16

therefore been analyzed by many federal courts. Thus, the Ninth Circuit has found it had "no authority to review" a claim that the USDA was "arbitrary and capricious in failing to follow a departmental regulation, where the departmental regulation contained almost identical language to that at issue here. See Cal-Almond, Inc. v. Dep't of Agriculture, 14 F.3d 429, 445 (9th Cir. 1993) (citing Mich. v. Thomas, 805 F.2d 176, 187 (6th Cir. 1986)).[5] The Ninth Circuit's holding applies equally where the language is found in an executive order or presidential proclamation rather than an agency regulation. Indeed, the Ninth Circuit cited and quoted a Sixth Circuit opinion which dealt with an executive order that contained a provision identical to those in the executive orders at issue here. See id.[6] The Sixth Circuit found that this language showed "clear and unequivocal intent that agency compliance with [the executive order] not be subject to judicial review." Thomas, 805 F.2d at 187.

The Court originally ordered supplemental briefing on this issue because it was concerned that if Plaintiffs did not have a private right of action under Executive Orders 13178 and

---

[5] Cal-Almond was implicitly overruled on one issue - not relevant here - via a complex procedural history. See R.J. Reynolds Tobacco Co. v. Bonta, 272 F. Supp. 2d 1085 n.16 (E.D. Cal. 2003). Its holdings on administrative law issues retain precedential value, however. See, e.g., NRDC v. Evans, 316 F.3d 904, 906, 911-12 (9th Cir. 2003) (relying on Cal-Almond for an administrative law issue).

[6] For this reason, Plaintiffs' argument that dicta in much older Ninth Circuit opinions demonstrates that "only Congress has the authority to preclude judicial review" (Pls. Supp. at 4) is unconvincing.

13196 and Proclamation 8336, the Court might not have subject-matter jurisdiction over Plaintiffs' claims under those authorities. (See Doc. No. 63.) In a decision issued less than a month before the Court's minute order, however, the Ninth Circuit clarified its earlier "seemingly inconsistent decisions" and seemed to suggest that the existence of a private right of action determines whether a party may state a claim, not whether the court has subject-matter jurisdiction over that claim. See Parra v. PacifiCare of Ariz., Inc., __ F.3d. __, 2013 WL 1693713, at *2 & n.1 (9th Cir. Apr. 19, 2013). The Parra decision would seem to imply that the language in the Executive Orders and Proclamation 8336 barring judicial review does not deprive the Court of subject-matter jurisdiction but rather merely prevents Plaintiffs from stating a claim.

In sum, because the Executive Orders and Proclamation 8336 explicitly create no private right of action against the United States or its agencies or employees, the Court finds that Plaintiffs cannot state a claim against NOAA for failure to follow or properly implement Executive Orders 13178 and 13196 or Proclamation 8336. Moreover, the Court finds that Plaintiffs do not have standing to pursue their claims under Executive Orders 13178 and 13196.

## 2. Failure To State A Claim Under Proclamation 8031

Next, Plaintiffs have failed to state a claim for negligence related to "operational tasks" performed pursuant to Proclamation 8031, the proclamation which created the NWHI

18

Monument. Plaintiffs allege that NOAA repeatedly changed its mind as to whether Dettling was allowed to fish in NWHI Monument waters after Proclamation 8031 was issued, repeatedly threatened to have Dettling arrested if he fished in the NWHI Monument without a federal permit, and ultimately failed to issue him a permit to fish there. (Compl. ¶¶ 11, 41, 42, 49, 54-59.)

Proclamation 8031 clearly states that bottomfish and pelagic fishing may continue in NWHI Monument waters "provided that . . . [t]he fishing is conducted in accordance with a valid commercial bottomfish permit issued by NOAA [that] is in effect on the date of this proclamation." 71 Fed. Reg. at 36,447. Plaintiffs, by contrast, plead that they did not have federal fishing permits issued by NOAA on the date that Proclamation 8031 was issued - indeed, they plead that no one did. (Compl. ¶ 37.) Since Plaintiffs have failed to plead facts showing that they were entitled to fish in NWHI Monument waters, they have failed to show that they were damaged by NOAA's refusal to allow them to fish there.

If Plaintiffs are attempting to base their claim on NOAA's misrepresentations that Dettling was allowed to fish in the NWHI Monument after Proclamation 8031 was issued, as NOAA correctly notes (Mot. at 22), the FTCA does not apply to "any claim arising out of . . . misrepresentation." 28 U.S.C. § 2680(h).

3.    **Boundaries of the PRIA Monument**

Plaintiffs also claim that NOAA is asserting authority over a larger marine area than it is entitled to under the relevant statutes. Plaintiffs state that Proclamation 8336 specifies that "NOAA shall manage the portion of the [PRIA Monument] out to 12 nautical miles with respect to fishery-related activities," but that "NOAA somehow interpreted Proclamation 8336 to grant NOAA the unlimited authority to manage as large an area as it wished." (Compl. ¶¶ 69-70.) They state that NOAA "threatens to have Dettling arrested if he attempts to fish within 50 nautical miles of any of the islands designated in Proclamation 8336." (<u>Id.</u> ¶ 73.) They seek an injunction restricting NOAA's regulation to within "the 12 nautical miles designated in Proclamation 8336." (<u>Id.</u> at 19.)

These allegations fail to plead a claim because they misstate the law. Plaintiffs have misread the plain text of Proclamation 8336, which states: "The monument includes the waters and submerged and emergent lands of the Pacific Remote Islands to the lines of latitude and longitude depicted on the accompanying maps, which lie approximately **50** nautical miles from the mean low water lines of [the Pacific Remote Islands]." 74 Fed. Reg. at 1567 (emphasis added). The Proclamation goes on to state that the Secretary of the Interior shall have primary responsibility for waters within twelve nautical miles of the islands, and that the Secretary of Commerce, acting through NOAA, shall have primary responsibility for waters <u>seaward</u> of the

20

twelve-nautical-mile boundary, with respect to fishery-related activities. (Id. at 1568.) The Proclamation then repeats that the Secretaries of Commerce and Interior "shall prohibit commercial fishing within boundaries of the monument." (Id.) It is therefore crystal-clear that NOAA, acting on behalf of the Secretary of Commerce, was required to prevent all commercial fishing within fifty nautical miles of the mean low water lines of the Pacific Remote Islands.

### 4.    Conclusion as to FTCA Negligence Claims

In sum, the Court has addressed every possible basis for Plaintiffs' negligence claim under the FTCA that the Court can locate in the Complaint. To the extent that Plaintiffs' negligence claim is based on the negligent performance of some operational task other than those discussed above, the Complaint is not sufficient to put NOAA on notice of such a claim. Given the above analysis, Plaintiffs' negligence claims under the FTCA are DISMISSED WITHOUT PREJUDICE, except for (1) any claim based on the theory that NOAA does not have the authority to regulate fishing within fifty nautical miles of the Pacific Remote Islands, and (2) any claim based on NOAA's alleged failure to properly implement Executive Orders 13178 and 13196, both of which are DISMISSED WITH PREJUDICE.

### C.   Intentional Infliction of Emotional Distress

NOAA argues that this Court does not have subject-matter jurisdiction over Plaintiffs' intentional infliction of emotional distress claim because Plaintiffs have not exhausted

their administrative remedies as to this claim. (Mot. at 19-20.) NOAA submits as evidence three administrative claims submitted by Plaintiffs, all of which complain only of "economic damages." (Mot. Exs. H, I, & J.) Plaintiffs do not address this argument in their Opposition or present any opposing evidence.

Failure to exhaust administrative remedies is properly considered under a 12(b)(1) motion to dismiss where exhaustion is required by statute. Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007). The FTCA requires plaintiffs to exhaust their administrative remedies before filing suit. See 28 U.S.C. §§ 2401(b), 2675(a). The FTCA's exhaustion requirement is jurisdictional and must be strictly construed in favor of the United States. Vacek v. U.S. Postal Serv., 447 F.3d 1248, 1250 (9th Cir. 2006) (citation omitted). As noted above, NOAA's affidavits and documentary evidence are properly before this Court because NOAA has brought a "factual" challenge to the Court's subject-matter jurisdiction. See Meyer, 565 F.3d at 1200 n.2 (where movants bring a factual challenge to court's subject-matter jurisdiction, court need not presume truthfulness of plaintiff's allegations and may look beyond the complaint without having to convert the motion into one for summary judgment).

Plaintiffs' administrative claim forms contain no mention of emotional distress and seek no damages for emotional harm. (See Mot. Exs. H, I, & J.) Nor do they mention the threats of arrest which apparently form the basis for Plaintiffs'

emotional distress claim. (See id.) Plaintiffs thus have not exhausted their administrative remedies as to this claim.

Plaintiffs' claim for intentional infliction of emotional distress is therefore DISMISSED WITHOUT PREJUDICE because Plaintiffs have not yet exhausted their administrative remedies.[7/]

## IV. Claims Under the Administrative Procedure Act

Under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 et seq., a court may (1) "compel agency action unlawfully withheld or unreasonably delayed" and (2) "hold unlawful and set aside agency action[s] . . . found to be," inter alia, "arbitrary, capricious, and abuse of discretion," "in excess of statutory jurisdiction," or "without observance of procedure required by law." Id. § 706.

### A. Arbitrary & Capricious Abuse of Administrative Discretion under the Executive Orders and Proclamations

Plaintiffs' first APA claim is premised upon "NOAA's arbitrary and capricious abuse of administrative discretion pursuant to Executive Order 13196, Proclamation 8031, and/or Proclamation 8336." (Compl. ¶ 9.)[8/]

_____

[7/] The Court notes that an administrative claim under the FTCA must be filed within two years after its accrual. See 28 U.S.C. § 2401. It is not clear from the Complaint, however, whether any of the alleged threats of arrest occurred within the last two years. Moreover, NOAA waived its statute of limitations arguments in its Reply brief (see Reply at 2), so the Court will not address this issue at this time.

[8/] Both of Plaintiffs' APA claims explicitly refer to NOAA's alleged actions or inactions. (See Compl. ¶¶ 9, 10.) The Court
(continued...)

As discussed above, Plaintiffs were given no enforceable benefit or right by, and have no private right of action under, Executive Order 13196 or Proclamation 8336. Plaintiffs may not use the APA to perform an end run around an explicit prohibition against judicial review. See Air Transp. Ass'n of Am. v. Fed. Aviation Admin., 169 F.3d 1, 8-9 (D.C. Cir. 1999) (executive order that explicitly stated it did not create any right enforceable against the United States was not subject to judicial review; plaintiff's attempt to use it as evidence that agency had acted arbitrarily and capriciously was "nothing more than an indirect - and impermissible - attempt to enforce private rights under the order").

As also discussed above, Proclamation 8031 allowed fishing to continue within the NWHI Monument only by those who held a federal fishing permit on the date Proclamation 8031 was issued. Plaintiffs have pled that they did not hold federal fishing permits on the date Proclamation 8031 was issued. They have therefore failed to plead facts showing that NOAA's preventing Plaintiffs from fishing in NWHI Monument waters was an abuse of discretion.

---

(...continued)
notes, however, that to the extent Plaintiffs wish to challenge the Proclamations and Executive Orders themselves, as NOAA correctly points out (Mot. at 28), a president's exercise of his discretion pursuant to a statute is not subject to judicial review under the APA because the president is not an "agency." Franklin v. Massachusetts, 505 U.S. 788, 796 (1992); see Dalton v. Specter, 511 U.S. 462, 476 (1994) ("How the President chooses to exercise the discretion Congress has granted him is not a matter for our review.")

Moreover, as also discussed above, Plaintiffs have failed to show that NOAA abused its discretion by regulating fishing beyond twelve nautical miles, but before fifty nautical miles, from the low water marks of the Pacific Remote Islands. Proclamation 8336 explicitly states that NOAA has primary responsibility for regulating fishing within those boundaries.

In sum, Plaintiffs' first APA claim is DISMISSED WITH PREJUDICE to the extent it relies on NOAA's alleged abuse of discretion under Executive Order 13196 or Proclamation 8336, or on the allegation that NOAA did not have authority to regulate fishing within fifty nautical miles of the Pacific Remote Islands, and is otherwise DISMISSED WITHOUT PREJUDICE.

### B. APA Claim for "Procedural Violations"

Plaintiffs' second APA claim is "premised upon NOAA's procedural violations in the adoption of its regulations or other agency action." (Compl. ¶ 10.) The rest of the Complaint, however, contains no factual allegations relating to NOAA's adoption of regulations and no facts that would explain what procedural rules NOAA allegedly violated, or when or how NOAA violated those rules. This claim is therefore DISMISSED WITHOUT PREJUDICE.

### C. Tucker Act Issues

NOAA argues that the APA claims should be dismissed because they are Tucker Act claims for more than $10,000 and therefore this Court does not have jurisdiction over them. (Mot. at 23-24.)

25

The Tucker Act gives the Court of Federal Claims exclusive jurisdiction for claims over $10,000 "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express of implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491. The district courts have concurrent jurisdiction with the Court of Federal Claims over Tucker Act claims seeking less than $10,000. 28 U.S.C. § 1346(a)(2). If a Tucker Act claim is brought in district court for an amount over $10,000, the court may dismiss the claim for lack of subject matter jurisdiction or transfer the claim to the Court of Federal Claims; if the plaintiff wishes to remain in district court, he must waive his damages in excess of $10,000. See, e.g., Waters v. Rumsfeld, 320 F.3d 265, 271 (D.C. Cir. 2003).

The Tucker Act "does not create any substantive right enforceable against the United States for money damages." United States v. Mitchell, 463 U.S. 206, 216 (1983). A substantive right must be found in some other source of law, such as "the Constitution, or any Act of Congress, or any regulation of an executive department." Id. (quoting 28 U.S.C. § 1491). The claimant must "demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" Mitchell, 463 U.S. at 216-17 (quoting United States v. Testan, 424 U.S. at 400). For jurisdictional purposes, "[i]t is enough . . . that a

26

statute creating a Tucker Act right be reasonably amenable to the reading that it mandates a right of recovery in damages." United States v. White Mountain Apache Tribe, 537 U.S. 465, 473 (2003). The merits of the claim are not pertinent to the jurisdictional inquiry. Jan's Helicopter Serv., Inc. v. F.A.A., 525 F.3d 1299, 1307 (Fed. Cir. 2008).

In this case, Plaintiffs' claim for compensation under the Consolidated Appropriations Act of 2008 (if that is the basis for Plaintiffs' compensation claim) appears to fall under the Tucker Act.  Appropriations Act provisions like the one at issue here have been found to be money-mandating, so as to create a Tucker Act claim. See, e.g., Wolfchild v. United States, 96 Fed. Cl. 302, 338 (Fed. Cl. 2010); cf. Samish Indian Nation v. United States, 419 F.3d 1355, 1366 (Fed. Cir. 2005) (Act governing appropriations not money-mandating where it did not require expenditure of general appropriations on specific programs for particular classes of beneficiaries). The Federal Circuit has "repeatedly recognized that the use of the word 'shall' generally makes a statute money-mandating." Greenlee Cnty. v. United States, 487 F.3d 871, 877 (Fed. Cir. 2007). Here, the 2008 Appropriations Act provision reads "The Secretary [of Commerce] shall promulgate regulations [that] provide[] a mechanism to compensate eligible participants for no more than the economic value of their permits." (See Mot. Ex. D (emphasis added).) This certainly appears to be a money-mandating statute under the meaning of the Tucker Act jurisdictional analysis.

As noted above, however, the Complaint does not plead the legal basis for Plaintiffs' compensation claim. It would therefore be premature to rule that this Court does not have jurisdiction over Plaintiffs' compensation claim. Plaintiffs should note the above analysis in drafting any future amended complaint, however; if Plaintiffs wish to bring a claim in this Court under the Consolidated Appropriations Act of 2008, they must expressly waive damages exceeding $10,000.

### CONCLUSION

For the foregoing reasons, the Court DISMISSES Plaintiffs' Complaint in its entirety.

First, the Court DISMISSES WITH PREJUDICE Plaintiffs' claims based on NOAA's failure to follow or correctly implement the two Executive Orders or Proclamation 8336. All three of these authorities explicitly state that they do not confer any legal right or benefit and do not create a private right of action against the United States or its agencies.

Second, the Court DISMISSES WITH PREJUDICE Plaintiffs' claims based on the theory that NOAA does not have authority to regulate fishing beyond twelve nautical miles from the Pacific Remote Islands. Proclamation 8336 explicitly states that NOAA has primary responsibility for regulating fishing beyond twelve nautical miles, but within fifty nautical miles, of the Pacific Remote Islands.

Third, the Court DISMISSES WITHOUT PREJUDICE Plaintiffs' claims based on NOAA's alleged wrongful denial of

28

compensation. Plaintiffs have failed to present factual allegations sufficient to show that they were entitled to compensation. Indeed, Plaintiffs' factual allegations appear to show that Plaintiffs were <u>not</u> eligible for compensation. The Court notes that this claim appears to arise under the Tucker Act and that the Court therefore can only assert subject-matter jurisdiction over it if the claim seeks less than $10,000 in damages.

Fourth, the Court DISMISSES WITHOUT PREJUDICE Plaintiffs' claims based on NOAA's alleged failure to follow or correctly implement Proclamation 8031. Plaintiffs have failed to present factual allegations sufficient to show that Plaintiffs were entitled to fish in the Northwestern Hawaiian Islands Monument area under the terms of Proclamation 8031.

Fifth, the Court DISMISSES WITHOUT PREJUDICE Plaintiffs' claim of intentional infliction of emotional distress. Plaintiffs have failed to exhaust their administrative remedies as to this claim.

Plaintiffs must file any further amended complaint within thirty days, or else judgment will be entered against them and this action will be closed. Any further amended complaint must correct all the deficiencies noted in this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 31, 2013



_____
Alan C. Kay
Sr. United States District Judge


Dettling v. United States, Civ. No. 11-00374 ACK KSC, Order Granting
Defendants' Motion To Dismiss