IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JOE DETTLING and ROBERT CABOS, | ) | Civ. No. 11-00374 ACK-KSC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| NATIONAL OCEANIC & ATMOSPHERIC | ) | |
| ADMINISTRATION, U.S. DEPARTMENT | ) | |
| OF COMMERCE, and DOE DEFENDANTS | ) | |
| 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER GRANTING DEFENDANTS' AMENDED MOTION TO DISMISS**

For the following reasons, the Court hereby DISMISSES Plaintiffs' Second Amended Complaint in its entirety with partial leave to amend, as set out in detail below.

**PROCEDURAL BACKGROUND**

Plaintiffs Joe Dettling and Robert Cabos filed their original complaint in this action on June 14, 2011. (Doc. No. 1.) On August 9, 2012, they filed the First Amended Complaint, naming as defendants the United States and the U.S. Department of Commerce, acting through co-defendant the National Oceanic Atmospheric Administration (together, "NOAA"). (Doc. No. 35.)

NOAA filed a Motion To Dismiss the First Amended Complaint on September 21, 2012, arguing that the Court lacked subject matter jurisdiction over Plaintiffs' claims and that

Plaintiffs had failed to state their claims. (Doc. No. 40.) On May 31, 2013, this Court granted NOAA's Motion to Dismiss and dismissed Plaintiffs' First Amended Complaint in its entirety, granting Plaintiffs partial leave to amend. (Doc. No. 68.)

Plaintiffs timely filed a Second Amended Complaint, the currently operative complaint, on June 30, 2013. (Doc. No. 70 ("SAC").) NOAA filed the instant Amended Motion to Dismiss the Second Amended Complaint on August 12, 2013,[1] arguing that Plaintiffs' Second Amended Complaint suffers from the same factual and legal flaws as the previous complaint that this Court dismissed on May 31, 2013. (Doc. No. 73 ("Mot.").) On September

---

[1] NOAA filed a prior Motion to Dismiss the Second Amended Complaint on August 7, 2013 (Doc. No. 71), but that motion was terminated upon the filing of NOAA's Amended Motion to Dismiss on August 12, 2013.

30, 2013, Plaintiffs filed an Opposition.[2/] (Doc. No. 75.) NOAA

filed its Reply on October 24, 2013. (Doc. No. 82.)[3/]

A hearing on the motion was held on November 5, 2013.

At the Court's request, the parties submitted supplemental

briefing on November 8, 2013 addressing additional evidence that

Plaintiffs introduced during the hearing. (Doc. Nos. 86, 87.)

## FACTUAL BACKGROUND

This case concerns NOAA's alleged improper denial of

Plaintiffs' fishing rights within the Papahanaumokuakea Marine

National Monument ("PMNM"), located near Hawaii. Plaintiffs

---

[2/] NOAA correctly notes that Plaintiffs' Opposition recites
a summary of the facts listed in the First Amended Complaint
(which was dismissed by this Court in its entirety on May 31,
2013), rather than the facts in the currently operative Second
Amended Complaint. NOAA therefore requests that Plaintiffs'
factual summary be stricken to the extent it differs from the
facts alleged in the Second Amended Complaint, and that
Plaintiffs be limited to arguing only as to those facts in the
Second Amended Complaint. Specifically, NOAA argues that
Plaintiffs' claims pursuant to Proclamation 8336 were dismissed
with prejudice by this Court in its May 31, 2013 Order, and that
Plaintiffs' arguments relying on Proclamation 8336 should
therefore be struck. (Reply at 1 n.1.) The Court agrees that
Plaintiffs inexplicably cite to facts from their First Amended
Complaint that are not included in their Second Amended
Complaint. The Court will therefore disregard the portion of
Plaintiffs' statement of facts that is derived from their First
Amended Complaint, as well as Plaintiffs' arguments as to
Proclamation 8336.

[3/] On October 9, 2013, in light of the government shutdown,
the Court granted NOAA a stay of their Reply due date and of the
hearing on their motion until such time as Congress appropriated
the funds necessary for the Department of Justice and other
Federal agency attorneys to return to work. (Doc. No. 77.) The
Court set a new hearing date and Reply deadline on October 19,
2013. (Doc. No. 80.)

allege that they fished in the PMNM area for many years prior to its establishment in 2006. (SAC ¶¶ 19, 38.)

**I.    Proclamation 8031**

On June 15, 2006, President George W. Bush issued Proclamation 8031, which established the waters previously designated as the Northwestern Hawaiian Islands Coral Reef Ecosystem Reserve as the new Northwestern Hawaiian Islands National Monument. See 71 Fed. Reg. 36,443, 36,453-54 (June 26, 2006). The Monument's name was later changed to the Papahanaumokuakea Marine National Monument ("PMNM"). Proclamation No. 8112, 72 Fed. Reg. 10,031 (March 6, 2007). Proclamation 8031 prohibited virtually all commercial and recreational fishing within the bounds of the PMNM, except for five additional years - until 2011 - of certain types of fishing. 71 Fed. Reg. at 36,447. Specifically, Proclamation 8031 stated:

> 1. The Secretaries shall ensure that any commercial lobster fishing permit shall be subject to a zero annual harvest limit.
>
> 2. Fishing for bottomfish and pelagic species. The Secretaries shall ensure that:
>
> a. Commercial fishing for bottomfish and associated pelagic species[4/] may continue within the monument for not longer than 5 years from the date of this proclamation provided that:

---

[4/] At the hearing, NOAA stated that there were no federal permits issued for pelagic fishing in the PMNM waters and that, pursuant to the Consolidated Appropriations Act of 2008, only bottomfish and lobster federal permit holders were compensated after the creation of the PMNM.

> (i) The fishing is conducted in accordance
> with a valid commercial bottomfish permit
> issued by NOAA; and
>
> (ii) Such permit is in effect on the date of
> this proclamation and is subsequently renewed
> pursuant to NOAA regulations . . . as
> necessary.

Id.

On August 29, 2006, NOAA and the Fish and Wildlife
Service, Department of the Interior, published joint regulations
to implement Proclamation 8031. See 50 C.F.R. § 404.104. The
regulations adopted language identical to that contained in
Proclamation 8031 (and quoted above) with respect to commercial
fishing in the PMNM. 50 C.F.R. § 404.104(b)(i) and (ii).

## II.  The Consolidated Appropriations Act of 2008

In 2008, Congress appropriated approximately $6.7
million in funds "to provide compensation to fishery participants
who will be displaced by the 2011 fishery closure resulting from
the creation" of the PMNM. Consolidated Appropriations Act of
2008, Pub. L. No. 110-161, 121 Stat. 1844 (2007) ("Consolidated
Appropriations Act").

The Consolidated Appropriations Act provides, in relevant
part, as follows:

> (a) The Secretary of Commerce is authorized to
> provide compensation to fishery participants who
> will be displaced by the 2011 fishery closure
> resulting from the creation by Presidential
> proclamation of the Papahanaumokuakea Marine
> National Monument.

(b) The Secretary shall promulgate regulations for the voluntary capacity reduction program that:

(1) identifies eligible participants as those individuals holding commercial Federal fishing permits for either lobster or bottomfish in the designated waters within the Papahanaumokuakea Marine National Monument;

(2) provides a mechanism to compensate eligible participants for no more than the economic value of their permits;

(3) at the option of each eligible permit holder, provides an optional mechanism for additional compensation based on the value of the fishing vessel and gear of such participants who so elect to receive these additional funds, provided that the commercial fishing vessels of such participants will not be used for fishing.

<u>Id.</u>

Pursuant to the Consolidated Appropriations Act, NOAA published a Final Rule on September 15, 2009, for the "Compensation to Federal Commercial Bottomfish and Lobster Fishermen Due to Fishery Closures in the Papahanaumokuakea Marine National Monument, Northwestern Hawaiian Islands." <u>See</u> 74 Fed. Reg. 47119-47123 (September 15, 2009). The regulations defined "eligible participants" as "individuals holding commercial Federal fishing permits for lobster or bottomfish within the Monument at the time the Monument was established." <u>Id.</u>

**III.  <u>Plaintiffs' Prior Fishing Permits & Communication with NOAA</u>**

Dettling alleges that he conducted pelagic trolling on state permits in the PMNM waters for many years prior to the Monument's establishment in 2006. (SAC ¶¶ 19, 38.) Dettling

6

alleges that, prior to the issuance of Proclamation 8031,
commercial fishing and pelagic trolling in the PMNM was never
conducted pursuant to a federal permit, but was rather always
conducted pursuant to a state permit. (Id. ¶¶ 26-27.) At the
hearing on the instant motion, NOAA stated that, prior to the
issuance of Proclamation 8031, federal bottomfish and lobster
permits existed for the PMNM waters. Pelagic trolling could be
conducted pursuant to state permits; at the hearing, NOAA
admitted that both Plaintiffs had general marine permits issued
by the State of Hawaii, allowing all types of fishing within the
PMNM waters prior to 2005.[5/]

In the Second Amended Complaint, Dettling states that,
on July 19, 2006 he asked NOAA to clarify whether he was allowed
to continue pelagic trolling in the newly established PMNM. (Id.
¶¶ 11, 30.) Dettling states that, on August 3, 2006, NOAA
responded that he was not allowed to fish in the PMNM on his
state fishing permit any longer because he did not have a federal
permit issued by NOAA as of June 15, 2006, and that he would be
arrested if he tried to do so. (Id. ¶¶ 12, 31-32.) Plaintiffs
allege that, on September 17, 2006, Dettling filed a claim for

---

[5/] In 2005, however, the State of Hawaii established a
Northwestern Hawaii Islands Marine Refuge and prohibited all
commercial fishing in state waters (i.e., zero to three nautical
miles from shore). Haw. Admin. R. § 13-60.5-4. NOAA stated during
the hearing that no compensation was provided by the State of
Hawaii for displaced commercial fishermen.

compensation premised on NOAA's closure of his traditional fishing grounds pursuant to the implementation of Proclamation 8031. (Id. ¶¶ 13, 45.) Dettling's September 17, 2006 letter requested "disaster relief" pursuant to the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. § 1861a. (Pltf.'s Ex. 4.) On April 4, 2007, NOAA responded stating that disaster relief was unavailable pursuant to 16 U.S.C. § 1861a because NOAA could not make a determination of a commercial fishery failure due to a fishery resource disaster, as Proclamation 8031 still allowed for certain fishing to continue through June 15, 2011. (Pltf.'s Ex. 5.) Dettling appears to have interpreted NOAA's letter as indicating that he could continue commercial fishing in the PMNM. (Id. ¶¶ 46-47.) When Dettling later gave notice of a planned fishing trip, NOAA told him he could not fish on his state permit and threatened to have him arrested if he went through with the fishing trip. (Id. ¶¶ 49-50.)

   With respect to Cabos, Plaintiffs state that, prior to the issuance of Proclamation 8031, there was already a zero quota prohibition on lobster fishing in the waters that were later designated the PMNM. (Id. ¶ 56.) Plaintiffs also allege that, prior to 2006, Cabos was allowed to lobster fish in the Pacific

Remote Island Areas ("PRIA")[6/] pursuant to a valid federal permit, and that he had a federal lobster fishing permit "to fish in the designated waters within the" PMNM. (Id. ¶¶ 59, 66.) Plaintiffs allege that "NOAA treated the PRIA as designated waters within the [PMNM] for purposes of restricting Cabos's access to the area pursuant to Proclamation 8031 . . . ." (Id. ¶¶ 66-67.) Plaintiffs state that when Proclamation 8031 was enacted, NOAA refused to honor Cabos's federal permit to lobster fish in the PRIA Monument. (Id. ¶ 60.) NOAA has, however, introduced evidence that a search of the agency's records revealed that Cabos was not issued a federal lobster or bottomfish permit for the area that became the PMNM for the fishing year 2006, or for any subsequent year. (Declaration of Michael Tosatto ("Tosatto Decl.") ¶¶ 4-5.) Cabos was issued two lobster permits for the PRIA for 2007-08, and 2008-09, but he did not renew the PRIA lobster permits after 2009. (Id. ¶ 6.) Under a

---

[6/] On January 6, 2009, President Bush issued Proclamation 8336, which established the Pacific Remote Islands Marine National Monument (the "PRIA Monument"). See 74 Fed. Reg. 1565 (Jan. 12, 2009). The boundaries of the PRIA Monument are "the waters and submerged and emergent lands of the Pacific Remote Islands . . . which lie approximately 50 nautical miles from the mean low water lines of [the Pacific Remote Islands]." Id. at 1567. The PRIA Monument is thus near to but does not overlap with the PMNM. See, e.g., NOAA Marine National Monument Program Map, www.fpir.noaa.gov/Library/MNM/eez_monument_4_6_2011.pdf (last visited Oct. 22, 2013). Proclamation 8336 prohibits all commercial fishing within the boundaries of the PRIA Monument. Id. at 1568.

PRIA lobster permit, Cabos would not be authorized to harvest lobsters in the PMNM. (Id.)

## IV.   Disbursement of Funds

According to Plaintiffs, in 2008 Congress designated over six million dollars to compensate displaced fishermen, and Plaintiffs were eligible to receive compensation. (SAC ¶¶ 63, 76-78.) NOAA disbursed the funds in May 2010. (Id. ¶ 82.) Pursuant to regulations promulgated under the Consolidated Appropriations Act, the eligible recipients of compensation were those holding commercial federal fishing permits for lobster or bottomfish within the PMNM waters at the time the PMNM was established. Specifically, this included eight holders of valid commercial federal permits for bottomfish, and fifteen holders of valid commercial federal permits for lobster. 74 Fed. Reg. 47119, 47120 (Sept. 15, 2009). Plaintiffs nevertheless allege that fishermen were automatically compensated for their loss of traditional fishing grounds based on state fishing logs, and that Dettling and Cabos received no compensation. (SAC ¶¶ 84-85.) Plaintiffs claim that NOAA employees told them that they were "accidentally excluded" from the disbursement, and that NOAA would ask Congress to allocate additional funds to compensate Plaintiffs. (Id. ¶¶ 86-87.)

## V.   Form 95 Administrative Claims

After having received no compensation, on January 7, 2011, Dettling and Cabos each filed a Standard Form 95 administrative claim for damages with NOAA. (Declaration of Michael N. Bogomolny ("Bogomolny Decl.") ¶¶ 2–3; Mot. Exs. A & B.) Both Form 95 claims state that "In January 2009, President Bush signed an Executive Order closing fishing in certain Pacific Remote Islands, specifically the islands of Palmyra, Kingman and Johnston, which were [Plaintiffs'] traditional fishing grounds." (Mot. Exs. A & B.) Dettling's Form 95 states that Dettling suffered "economic harm in the amount of $300,000.00" as a result of the 2009 Executive Order, (Ex. A), and Cabos's Form 95 states that Cabos suffered "economic harm in the amount of $900,000.00" as a result of the 2009 Executive Order. (Ex. B.) Neither form makes mention of Proclamation 8031 (signed in 2006), the Consolidated Appropriations Act of 2008, or any injury other than economic harm. (<u>See</u> Mot. Exs. A & B.)

On February 24, 2011, Dettling and Cabos received a letter from the Department of Commerce denying their claim and stating that, if Plaintiffs disagree with the determination, they may file suit in the appropriate U.S. District Court within six months from the date of the mailing of the letter. (SAC ¶ 12; <u>see</u> First Mot. to Dismiss (Doc. No. 40), Ex. K.) Plaintiffs filed their original complaint in this case on June 14, 2011. (Doc. No. 1.)

11

**STANDARD**

**I.    Motion To Dismiss Under Rule 12(b)(1)**

A court's subject matter jurisdiction may be challenged under Federal Rule of Civil Procedure ("Rule") 12(b)(1). Such challenges may be either "facial" or "factual." Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

In a facial attack, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. (quoting Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)). When opposing a facial attack on subject matter jurisdiction, the nonmoving party is not required to provide evidence outside the pleadings. Wolfe, 392 F.3d at 362; see Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009) (treating defendant's challenge to subject matter jurisdiction as facial because defendant "introduced no evidence contesting any of the allegations" of the complaint). In deciding a facial Rule 12(b)(1) motion, the court must assume the plaintiff's allegations in the complaint to be true and draw all reasonable inferences in his favor. Wolfe, 392 F.3d at 362 (citations omitted).

By contrast, in a factual attack, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. at 362 (quoting Safe Air, 373 F.3d at 1039). The moving party may bring a factual

12

challenge to the court's subject matter jurisdiction by submitting affidavits or any other evidence properly before the court. The nonmoving party must then "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009) (citation omitted). In these circumstances, the court may look beyond the complaint without having to convert the motion into one for summary judgment. U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1200 n.2 (9th Cir. 2009). When deciding a factual challenge to the court's subject matter jurisdiction, the court "need not presume the truthfulness of the plaintiffs' allegations." Id.

In this case, NOAA brings a factual challenge to the Court's subject matter jurisdiction, and presents declarations from two NOAA and Department of Commerce officials, along with various exhibits. (See Doc. No. 73.)

## II.  Motion To Dismiss Under Rule 12(b)(6)

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory.

Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011).

On a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party. Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012) (citation omitted). The Court may not dismiss a "complaint containing allegations that, if proven, present a winning case . . . no matter how unlikely such winning outcome may appear to the district court." Balderas v. Countrywide Bank, N.A., 664 F.3d 787, 791 (9th Cir. 2011).

Nonetheless, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations omitted). "[O]nly pleaded facts, as opposed to legal conclusions, are entitled to assumption of the truth." United States v. Corinthian Colls., 655 F.3d 984, 991 (9th Cir. 2011) (citation omitted). A "formulaic recitation of the elements of a cause of action" will not defeat a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). The complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility

14

standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556-57). Moreover, the Court need not accept as true allegations that contradict the complaint's exhibits, documents incorporated by reference, or matters properly subject to judicial notice. Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 550, 588 (9th Cir. 2008); Sprewell v. Golden State Warriors, 255 F.3d 979, 988 (9th Cir. 2001).

The Court should grant leave to amend "even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts." OSU Student Alliance v. Ray, 699 F.3d 1053, 1079 (9th Cir. 2012). Leave to amend "is properly denied, however, if amendment would be futile." Carrico v. City & County of S.F., 656 F.3d 1002, 1008 (9th Cir. 2011).

<u>**DISCUSSION**</u>

**I.** **Claims Under the Federal Tort Claims Act**

Dettling and Cabos bring three claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674: (1) negligence or wrongful action and/or omission based on NOAA's alleged failure to follow regulations specifically prescribing its duties

pursuant to Proclamation 8031 and the Consolidated Appropriations Act; (2) negligent performance of an operational task mandated by Proclamations 8031 and the Consolidated Appropriations Act; and (3) intentional infliction of emotional distress. (SAC ¶¶ 6-8.)

**A.    FTCA Negligence Claims**

**1.    Exhaustion**

As an initial matter, NOAA argues that this Court lacks subject matter jurisdiction over Plaintiffs' FTCA negligence claims because Plaintiffs have not exhausted their administrative remedies as to these claims. The FTCA provides that an "action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). If no such claim is presented to the appropriate federal agency within two years after the claim accrues, a tort claim shall be "forever barred." 28 U.S.C. § 2401(b).

The Ninth Circuit has made clear that "the exhaustion requirement is jurisdictional in nature and must be interpreted strictly." <u>Vacek v. U.S. Postal Serv.</u>, 447 F.3d 1248, 1250 (9th Cir. 2006). Failure to exhaust administrative remedies, where exhaustion is required by statute, is properly considered under a

12(b)(1) motion to dismiss. Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007).

NOAA argues that Plaintiffs have failed to exhaust their administrative remedies as to their negligence claims brought under the FTCA. (Mot. at 13-14.) Plaintiffs argue that they have satisfied the FTCA exhaustion requirement, either because of Dettling's September 17, 2006 letter to NOAA, or because of the Form 95 administrative claims Dettling and Cabos submitted to NOAA on January 7, 2011.[7/]

---

[7/] At the hearing on the instant motion, Plaintiffs' counsel argued for the first time that a third claim existed to satisfy the exhaustion requirement. Specifically, Plaintiffs pointed to a FTCA Form 95 administrative claim filed by Mr. Rory Soares Toomey on February 14, 2011. (See Doc. No. 21, Ex. C.) As an initial matter, the Court notes that the Form 95 filed by Toomey (Doc. No. 21, Ex. C) and NOAA's response to the Form 95 claims (Doc. No. 21, Ex. D) were referenced by the parties during the hearing, and Exhibit D is also referenced in Plaintiffs' Second Amended Complaint; however, they were attached as exhibits to NOAA's First Motion to Dismiss that was withdrawn. (See Doc. Nos. 21, 37.) As to the exhibits themselves, Plaintiffs argue that Toomey was their attorney at the time, and that he filed the Form 95 on their behalf. The form on its face contradicts this claim, however, as the claimant is listed as "Rory Soares Toomey," and there is no indication that the form involves claims by either Dettling or Cabos. (See id. at Box 2.) Indeed, if Mr. Toomey intended to file a claim on behalf of Plaintiffs, he clearly knew how to do so, as the Form 95 claims he filed on January 7, 2011 stated that the claimants were "Robert Cabos c/o Rory Soares Toomey," and "Joe Dettling c/o Rory Soares Toomey." (Mot. Exs. A & B.) He made no similar designation on the February 14, 2011 form. The Court therefore must conclude that it was filed by Toomey on behalf of himself, rather than on behalf of Plaintiffs. Indeed, NOAA's February 24, 2011 response to the Form 95 indicated that Toomey's claim was filed on behalf of himself, and did not involve a tort cognizable under the FTCA. (See Doc. No. 21, Ex. D.) Plaintiffs did not, however, file a response to NOAA indicating that NOAA's interpretation of the February 14, 2011

### a.   Dettling's September 17, 2006 Letter

Plaintiffs allege that Dettling submitted a claim to NOAA for compensation for the loss of his traditional fishing grounds as a result of the implementation of Proclamation 8031 on September 17, 2006. (SAC ¶ 13.) Plaintiffs failed to attach any documentation of such a claim to their opposition. During the hearing on the instant motion, however, Plaintiffs' counsel provided the Court with a copy of the September 16, 2007 letter. The letter states that it is a "demand for disaster relief" pursuant to 16 U.S.C. § 1861a, and appears to assert that Dettling is requesting such disaster relief as a result of the issuance of Proclamation 8031. (Pltf.'s Ex. 4.)

As an initial matter, the September 17, 2006 letter is insufficient for purposes of exhausting Plaintiff Cabos's remedies, as it was not filed by him or on his behalf, and he is not mentioned at all in the letter.

---

claim as being filed on Toomey's behalf was incorrect. Further, even assuming the Form 95 claim could be interpreted as having been filed on behalf of Plaintiffs, it does not address the substance of the claims in the instant suit, namely, NOAA's implementation of Proclamation 8031 and the Consolidated Appropriations Act. As such, the February 14, 2011 Form 95 claim is insufficient for purposes of exhaustion. In any event, as set forth in this Court's May 31, 2013 Order, Plaintiffs admit that they did not hold any federal fishing permits for the PMNM waters prior to the issuance of Proclamation 8031. Furthermore, the Court concurs with the additional grounds set forth in NOAA's supplemental briefing as to why the February 14, 2011 Form 95 claim insufficient for purposes of exhaustion.

Further, the September 17, 2006 letter is likewise insufficient for purposes of Dettling's FTCA exhaustion requirement for two reasons. First, the letter specifically states that Dettling seeks "disaster relief" pursuant to the Magnuson-Stevens Fishery Conservation and Management Act ("MSA"), 16 U.S.C. § 1861a. The MSA allows the Secretary of Commerce to declare a federally managed fishery a failure at the Secretary's discretion or at the request of the governor of an affected state or a fishing community. 16 U.S.C. § 1861a(a)(1). Once the Secretary has determined that a commercial fishery failure has occurred, the Secretary may make funds available to, *inter alia*, provide assistance to affected fishing communities. 16 U.S.C. § 1861a(a)(2). On April 4, 2007, NOAA responded to Dettling's claim, stating that "there is currently no commercial fishery failure" because Proclamation 8031 permitted certain fishing to continue through June 15, 2011. (Doc. No. 85, Ex. 1 at 2.) Dettling did not thereafter respond to NOAA indicating that NOAA's interpretation of his claim as for "disaster relief" pursuant to the MSA was in some way incorrect. Dettling's request pursuant to the MSA's disaster relief scheme was therefore entirely different from the claims for negligence he asserts in the Second Amended Complaint.

In the instant suit, he seeks compensation "for the loss of his fishing rights" in the PMNM, and "for damages

19

resulting from NOAA's tortious and/or arbitrary and capricious refusal to give Dettling a federal permit to fish" in the PMNM. (SAC at "Prayer for Relief" (n.p.).) He does not challenge NOAA's failure to declare a commercial fishery failure, or failure to compensate him pursuant to 16 U.S.C. § 1861a(a)(2). As such, the September 17, 2006 deals with an entirely different claim than the one in the instant suit. Moreover, Dettling sent the September 2006 letter more than 15 months prior to the enactment of the Consolidated Appropriations Act of 2008. Thus, the claim in the September 2006 letter could not have been (and was not) premised upon Plaintiffs' theory in the Second Amended Complaint that NOAA failed to follow regulations that specifically prescribe its duties pursuant to Proclamation 8031 and the Consolidated Appropriations Act, and negligently performed an operational task mandated by Proclamation 8031 and the Consolidated Appropriations Act.

Second, even if the September 2006 letter was sufficient to challenge NOAA's implementation of Proclamation 8031, it was nevertheless untimely under the MSA. The MSA provides that judicial review of regulations and agency action taken pursuant to the Act is subject to judicial review under § 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 501

*et seq.* 16 U.S.C. § 1855(f)(1).[8/] Under the MSA, any such petition for review must be filed within 30 days after the date on which the challenged regulations are promulgated or published in the Federal Register. 16 U.S.C. § 1855(f). If a petition is not timely filed, the reviewing court lacks jurisdiction to hear the challenge to the regulations. <u>Norbird Fisheries, Inc. v. National Marine Fisheries Service</u>, 112 F.3d 414, 416 (9th Cir. 1997). Proclamation 8031 was issued on June 15, 2006; Dettling's letter is dated September 17, 2006, more than three months (and far more than thirty days) after the issuance of the Proclamation.

As such, Dettling's September 2006 letter is insufficient to exhaust Plaintiffs' administrative remedies as to their negligence claims under the FTCA.

### b.    The January 7, 2011 Form 95 Claims

Both Dettling and Cabos filed Form 95 administrative claims with NOAA on January 7, 2011. These claims are nearly identical, and both complain of "economic harm" suffered as a result of an executive order signed by President Bush in January of 2009 "closing fishing in certain Pacific Remote Islands,

---

[8/] That section of the APA provides that a reviewing court shall hold unlawful and set aside agency action found to be, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A) & (C).

specifically the islands of Palmyra, Kingman and Johnston." (Mot. Exs. A & B.) Importantly, however, neither of these claims reference Proclamation 8031 or the Consolidated Appropriations Act. Indeed, the Executive Order signed by President Bush in January of 2009 that Plaintiffs are apparently referencing in their Form 95 claims is Proclamation 8336, which created the PRIA Monument. <u>See</u> 74 Fed. Reg. 1565 (Jan. 12, 2009).[9] The boundaries of the PRIA Monument are "the waters and submerged and emergent lands of the Pacific Remote Islands . . . which lie approximately 50 nautical miles from the mean low water lines of Wake, Baker, Howland, and Jarvis Islands, Johnston Atoll, Kingman Reef, and Palmyra Atoll." <u>Id.</u> at 1567. The PRIA Monument is near to but does not overlap with the protected area created by Proclamation 8031 (the PMNM). See NOAA Marine National Monument Program Map, www.fpir.noaa.gov/Library/MNM/eez_monument_4_6_2011.pdf. As such, Plaintiffs' Form 95 claims thus appear to be referencing a different Executive Order, which restricted fishing in a different area, than the one they base their claims on in the instant suit.

Further, nowhere on the Form 95 claims do Plaintiffs mention the Consolidated Appropriations Act specifically, or a

_____

[9] Moreover, Plaintiffs' Form 95 claims identify the "Date and Day of Accident" as January 15, 2009, again, suggesting that the forms do not relate to Proclamation 8031 (issued in 2006), but, rather, to Proclamation 8336 (signed on January 9, 2009). (<u>See</u> Mot. Exs. A & B.)

government compensation scheme for lost fishing rights generally. As such, Plaintiffs do not, and cannot, argue that NOAA's alleged negligent implementation of the Consolidated Appropriations Act is somehow encompassed in their Form 95 claims of economic harm arising out of the creation of the PRIA Monument in 2009.

Plaintiffs appear to argue that, notwithstanding the fact that the two Form 95 claims do not reference Proclamation 8031 or the Consolidated Appropriations Act, and instead appear to reference Proclamation 8336, they have still satisfied the exhaustion requirement because the basis for the Form 95 claims was Plaintiffs' loss of their traditional fishing grounds as a result of executive action. (Opp'n at 20.) In Goodman v. United States, the Ninth Circuit stated that the notice required for exhaustion is "minimal, and a plaintiff's administrative claims are sufficient even if a separate basis of liability arising out of the same incident is pled in federal court." 298 F.3d 1048, 1055 (9th Cir. 2002). Plaintiffs thus argue that their Form 95 claims were sufficient to put NOAA on notice of the "time, place, cause and general nature of the injury and the amount of compensation demanded." Id.

While the Court acknowledges that administrative claims filed by lay persons generally need not provide the relevant administrative agency with all the details of a plaintiff's federal complaint, see id. at 1056, the Court disagrees that

23

Plaintiffs' Form 95 claims were sufficient to put NOAA on notice of their claims in the instant suit. Plaintiffs' Form 95 claims specifically state that Cabos and Dettling "suffered economic harm" as a result of "an Executive Order closing fishing in certain Pacific Remote Islands, specifically the islands of Palmyra, Kingman and Johnston," signed by President Bush in 2009. (See Mot. Exs. A & B.) These allegations are relatively specific, and use language mirroring that of Executive Order 8336, which created the PRIA Monument. See 74 Fed. Reg. at 1567 (defining the boundaries of the PRIA Monument as "the waters and submerged and emergent lands of the Pacific Remote Islands . . . which lie approximately 50 nautical miles from the mean low water lines of Wake, Baker, Howland, and Jarvis Islands, Johnston Atoll, Kingman Reef, and Palmyra Atoll."). Indeed, the Form 95 claims seem to indicate that the "time, place, cause and general nature of the injury" were a loss of fishing rights in the PRIA Monument in 2009. As such, it was reasonable for NOAA to conclude that Plaintiffs' administrative claims were for economic damages arising as a result of the issuance of Proclamation 8336. The PRIA Monument (created by Proclamation 8336) and the PMNM (created by Proclamation 8031) are two distinct areas of protection established at two different times. The Court therefore cannot say that notice of a claim arising out of the restriction of fishing in the PRIA Monument necessarily provided

24

notice to NOAA about claims arising out of the restriction of fishing in the PMNM.

The torts alleged in the Second Amended Complaint involve NOAA's alleged failure to follow regulations prescribed by Proclamation 8031 and the Consolidated Appropriations Act, and negligence in performance of an operational task mandated by Proclamation 8031 and the Consolidated Appropriations Act. (See SAC ¶¶ 6-7.) Plaintiffs' Form 95 claims state that Plaintiffs suffered economic harm as a result of the loss of their traditional fishing grounds pursuant to a 2009 Executive Order. The Form 95 claims are, thus, premised on an entirely different cause of harm than the one complained of in the instant suit. While the Form 95 claims gave NOAA "sufficient written notice to commence investigation" as to Plaintiffs' losses arising out of Proclamation 8336 (the relevant 2009 Executive Order), they simply do not give NOAA any notice of Plaintiffs' claims based upon Proclamation 8031 and the Consolidated Appropriations Act. See Warren v. U.S. Dep't of Interior Bureau of Land Mgmt., 724 F.2d 776, 779-80 (9th Cir. 1984) (stating that, in order to satisfy the FTCA exhaustion requirement, a plaintiff must file "a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and . . . a sum certain damages claim."); Avery v. United States, 680 F.2d 608, 610 (9th Cir. 1982) (same).

Indeed, NOAA's response to Plaintiffs' Form 95 claims supports this conclusion. On February 24, 2011, NOAA sent a letter responding to Plaintiffs' January 7, 2011 claims, stating that Plaintiffs' claims "alleging that the issuance of Proclamation 8336 by President Bush on January 6, 2009 was a tort, is not cognizable under the FTCA as per 28 U.S.C. § 2401(b)." (First Mot. to Dismiss (Doc. No. 40), Ex. K.) This response makes clear that NOAA interpreted Plaintiffs' Form 95 claims to be complaining of harm caused by the issuance of Proclamation 8336. Notwithstanding this response, Plaintiffs failed to file corrected Form 95 claims indicating that their claims were actually premised upon Proclamation 8031. Thus, while Plaintiffs' Form 95 claims may be sufficient to exhaust a federal claim premised upon Proclamation 8336,[10] they are simply insufficient to exhaust the claims Plaintiffs raise in the Second Amended Complaint. See Goodman, 298 F.3d at 1057 (noting that the agency's denial of a claim on the merits was persuasive evidence

_____

[10] The Court notes that, in its May 31, 2013 Order Granting Defendants' Motion to Dismiss, the Court found that, because Proclamation 8336 explicitly created no private right of action against the United States or its agencies or employees, Plaintiffs could not state a claim against NOAA for failure to follow or properly implement Proclamation 8336. (Doc. No. 68 at 18.)

that the requirement of minimal notice was satisfied); <u>Warren</u>, 724 F.2d at 779 (same).[11/]

Plaintiffs' claims for negligence in failing to follow regulations that specifically prescribe duties pursuant to Proclamation 8031 and the Consolidated Appropriations Act, and negligent performance of an operational task mandated by Proclamation 8031 and the Consolidated Appropriations Act are therefore DISMISSED WITHOUT PREJUDICE because Plaintiffs failed to exhaust their administrative remedies.[12/]

2.  **Subject Matter Jurisdiction Over FTCA Negligence Claims**

Even assuming Plaintiffs properly exhausted their administrative remedies, NOAA argues that Plaintiffs' claims must be dismissed for lack of subject matter jurisdiction because

---

[11/] Plaintiffs argued during the hearing that on February 15, 2013 the parties stipulated to a stay of all discovery until this Court decided NOAA's first motion to dismiss (<u>See</u> Doc. No. 59), and that Plaintiffs were therefore prevented from conducting the discovery necessary to respond to the instant motion. The Court notes, however, that the Court granted the first motion to dismiss on May 31, 2012, (Doc. No. 68,) after which Plaintiffs could have conducted discovery. Further, Plaintiffs filed this action on June 14, 2011, and thus had nearly two years to conduct discovery prior to entering into the stipulation. Finally, Plaintiffs could have (but did not) submitted their own declarations to support their opposition to the instant motion.

[12/] Because the Court finds that Plaintiffs administrative claims to NOAA are insufficient for purposes of exhaustion, the Court need not address the issue of whether those claims were timely under the FTCA.

Plaintiffs' claims do not fall under the FTCA's waiver of sovereign immunity. (Mot. at 17.)

Sovereign immunity is "jurisdictional in nature," and, thus, this Court lacks jurisdiction over claims brought against NOAA that do not fall within the provided-for causes of action in the FTCA. F.D.I.C. v. Meyer, 510 U.S. 471, 475, 477-78 (1994). The FTCA provides liability only in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Thus, to bring an FTCA claim, a plaintiff must show the same elements that state law requires for the tort cause of action. See Wright v. United States, 719 F.2d 1032, 1034 (9th Cir. 1983), abrogated on other grounds as stated in Gasho v. United States, 39 F.3d 1420, 1435 (9th Cir. 1994). As such, Plaintiffs must show that NOAA's actions, if committed by a private party, would constitute a tort in Hawaii.

As NOAA correctly points out, however, the FTCA does not waive sovereign immunity for causes of action where the claimed negligence arises out of the failure of the United States to carry out federal statutory duties or otherwise follow federal law. See Meyer, 510 U.S. at 478 (stating that the FTCA does not waive sovereign immunity for constitutional torts because those claims are based on a violation of federal law, rather than the

28

applicable state law.); <u>Jachetta v. United States</u>, 653 F.3d 898, 904 (9th Cir. 2011) (stating that allegations of violations of federal law are not actionable under the FTCA); <u>Love v. United States</u>, 60 F.3d 642, 644 (9th Cir. 1995) ("The breach of a duty created by federal law is not, by itself, actionable under the FTCA."). Rather, jurisdiction under the FTCA may only be found where there exist analogous circumstances in which state law would impose a duty of care on a private person. <u>See</u> <u>United States v. Olson</u>, 546 U.S. 43, 46-47 (2005); <u>Westbay Steel, Inc. v. United States</u>, 970 F.2d 648 (9th Cir. 1992) ("[T]he FTCA applies only if there is a 'persuasive analogy with private conduct.'" (quoting <u>Woodbridge Plaza v. Bank of Irvine</u>, 815 F.2d 538, 543 (9th Cir. 1987)).

Here, Plaintiffs appear to be claiming that, because they held general marine fishing permits issued by the State of Hawaii, and Cabos held a federal lobster fishing permit for the PRIA Monument waters, and because Proclamation 8031 provided that "[t]he establishment of [the PMNM] is subject to valid and existing rights" and "nothing in this proclamation shall diminish or enlarge the jurisdiction of the State of Hawaii," NOAA was negligent in "failing to follow regulations specifically prescribing its duties" and negligently performed an "operational task" mandated by Proclamation 8031 when it implemented regulations restricting pelagic trolling and lobster fishing in

PMNM waters. (See SAC ¶¶ 22-24, 33-37; Opp'n at 25-27.)
Importantly, however, the conduct Plaintiffs complain of, NOAA's
alleged negligent implementation of Proclamation 8031, was
undertaken by NOAA pursuant to federal law. Specifically, NOAA
implemented the requirements of Proclamation 8031 through its
authority under the MSA, 16 U.S.C. § 1801, et seq. As such, even
assuming Proclamation 8031 and the Consolidated Appropriations
Act imposed some duty upon NOAA with respect to its
implementation of the laws, Plaintiffs' allegations that NOAA
breached such a duty are not actionable under the FTCA. See,
e.g., Jachetta, 653 F.3d at 904 (stating that allegations of
violations of federal law are not actionable under the FTCA).[13]

Further, Plaintiffs have failed to identify any
analogous Hawaii state law under which NOAA's alleged negligence
in implementing Proclamation 8031 and the Consolidated
Appropriations Act would be actionable. Plaintiffs cite to
Figueroa v. State, in which the Hawaii Supreme Court addressed
whether the State of Hawaii breached its duty of care to an
inmate in the Hawaii Youth Correctional Facility. 61 Haw. 369
(1979). The Figueroa court found that the state's duty to the
plaintiff arose out of "the relationship created between the two

---

[13] Indeed, as NOAA correctly points out, the proper way for
Plaintiffs to challenge NOAA's implementation of Proclamation
8031 would have been to file a petition for review within the 30-
day limitations period established by the MSA. See 16 U.S.C.
§ 1855(f).

as a result of [plaintiff's] commitment" to the facility. <u>Id.</u> at
375-76. Specifically, the court noted that Hawaii law provides
that the director of social services "shall be the guardian of
the person of every child committed to or received at" the
facility. <u>Id.</u> (quoting Haw. Rev. Stat. § 352-9).

Plaintiffs appear to argue that Proclamation 8031 and
the Consolidated Appropriations Act similarly gave rise to a duty
of care on the part of NOAA in its implementation of the fishery
restrictions and compensation scheme. (Opp'n at 27-28.)
Plaintiffs do not, however, identify any specific provision in
either Proclamation 8031 or the Consolidated Appropriations Act
that would give rise to such a duty. Further, the court in
<u>Figueroa</u> did not, as Plaintiffs claim, base its finding of
negligence on Hawaii's failure to follow its own regulations;
rather, the court found that the state's negligence, if any,
could only be predicated on the manner in which the state
observed and supervised plaintiff in his isolation cell prior to
his suicide. <u>Id.</u> at 377.[14/] This Court therefore fails to see how

---

[14/] The other case Plaintiffs cite, <u>Stryker v. Queen's</u>
<u>Medical Center</u>, 60 Haw. 214 (1978), is likewise inapposite. The
<u>Stryker</u> court, among other things, found no error in a trial
court's instruction to a jury that certain precautionary
guidelines regarding the care and treatment of psychiatric
patients were in effect at the time of the plaintiff's death and
that a failure to follow such guidelines could be considered as
evidence of negligence. <u>Id.</u> at 219.

the Figueroa court's assessment of foreseeability and imposition

of liability is in any way analogous to the case at hand.[15]

Finally, even assuming Plaintiffs could identify an

analogous case imposing liability in Hawaii for negligence

arising out of a failure to properly implement a federal law, it

is not at all clear that Plaintiffs can demonstrate that NOAA's

implementation of Proclamation 8031 did, in fact, negligently

"diminish[] the jurisdiction of the State of Hawaii in

contradiction to the express mandates of Proclamation 8031." (See

SAC ¶¶ 35-37.) Under the MSA, the United States exercises

"sovereign rights and exclusive fishery management authority over

all fish . . . within the exclusive economic zone." 16 U.S.C.

---

[15] The Court notes that, even assuming Plaintiffs could identify some analogous case imposing liability in Hawaii, as the Court stated in its May 31, 2013 Order, Plaintiffs have failed to put forth facts supporting their allegation that NOAA's implementation of Proclamation 8031 as it applied to Plaintiffs was in some way negligent. Proclamation 8031 clearly states that federal lobster fishing permits "shall be subject to a zero annual harvest limit," and that fishing for "bottomfish and associated pelagic species" may continue in PMNM waters "provided that . . . [t]he fishing is conducted in accordance with a valid commercial bottomfish permit issued by NOAA [that] is in effect on the date of this proclamation." 71 Fed. Reg. at 36,447. Plaintiffs did not have federal fishing permits for the PMNM waters issued by NOAA on the date that Proclamation 8031 was issued. (SAC ¶¶ 19, 26-27, 38; Tosatto Decl. ¶¶ 4-9.) Because Plaintiffs have failed to plead facts showing that they were entitled to fish in PMNM waters, they have failed to show that NOAA's refusal to allow them to fish there constituted negligence.

§ 1811(a).[16/] The Exclusive Economic Zone ("EEZ") consists of the waters two hundred nautical miles from the coastal boundary of each state,[17/] 16 U.S.C. § 1811, and thus encompasses the PMNM.

Because the United States has sovereign rights and exclusive fishery management authority over the EEZ, under the MSA a state may only regulate the harvest of fishery resources in the EEZ by its citizens where "[t]he fishing vessel is registered under the law of the State, and (i) there is no . . . applicable Federal fishing regulations . . . or (ii) the State's laws and regulations are consistent with the fishery management plan and applicable Federal fishery regulations [for the relevant waters.]" 16 U.S.C. § 1856(a)(3). Accordingly, after the issuance of Proclamation 8031 in 2006, the State of Hawaii could not authorize Plaintiffs to fish in the federal waters within the PMNM because doing so would be inconsistent with the "applicable Federal fishing regulations" for the lobster, bottomfish, and associated pelagic species fisheries. And prior to 2006,

_____

[16/] Prior to the enactment of the MSA, states were allowed to regulate beyond their territorial waters because there were few Federal fishery regulations on the books. During this period, the Supreme Court heard several cases that raised the issue of preemption of state regulations in, or affecting, federal waters. In Skiriotes v. Florida, the Supreme Court held that in matters affecting its legitimate interest a state may regulate the conduct of its citizens on the high seas as long as there was no conflicting federal provision. 313 U.S. 69, 77 (1941).

[17/] The outer boundary of a state's territorial waters is at three nautical miles seaward from that state's coastline.

Plaintiffs could no longer conduct pelagic trolling or fish for lobster in the state waters within the PMNM (the waters from zero to three miles from the shore) because, in 2005, the State of Hawaii established a Northwestern Hawaii Islands Marine Refuge and prohibited all commercial fishing in State waters (i.e., zero to three nautical miles from shore). Haw. Admin. R. § 13-60.5-4.

Plaintiffs argue that this represented a diminishment of the State of Hawaii's jurisdiction. Hawaii's jurisdiction extends three nautical miles from the line of ordinary low water surrounding each of the islands comprising the state. C.A.B. v. Island Airlines, Inc., 235 F. Supp. 990, 1007 (D. Hawaii 1964), aff'd Island Airlines, Inc. v. C.A.B., 352 F.2d 735 (9th Cir. 1965). Pursuant to the MSA, the EEZ, the area in which the federal government exercises exclusive jurisdiction over natural resources, begins at the State of Hawaii's coastal boundary (three miles from shore) and extends out two hundred nautical miles from that boundary. 16 U.S.C. § 1811. On the other hand, the PMNM encompasses both state (zero to three miles from shore) and federal (EEZ) waters. As such, after the issuance of Proclamation 8031, the State of Hawaii's Department of Natural Resources, the U.S. Department of the Interior's Fish and Wildlife Service, and NOAA signed a Memorandum of Agreement ("MOA") addressing how the state and federal entities would coordinate management of the PMNM. See Memorandum of Agreement to

Promote Coordinated Management of the Northwestern Hawaiian Islands Marine National Monument (Dec. 8, 2006), available at http://www.papahanaumokuakea.gov/PDFs/MOA_Dec06_Color.pdf. Under the MOA, Hawaii agreed to have State lands and waters in the PMNM managed as part of the Monument, with the three parties (the U.S. Secretary of Commerce, the U.S. Secretary of the Interior, and the State of Hawaii) serving as Co-Trustees. Id.; see also Papahanaumokuakea Marine National Monument Management Plan Vol. 1 at ES-2 (Dec. 2008), available at http://www.papahanaumokuakea.gov/management/mp/vol1_mmp08.pdf. ("[M]anagement of the [PMNM] is the responsibility of the three parties acting as Co-Trustees: the State of Hawaiʻi, Department of Land and Natural Resources; the U.S. Department of the Interior, FWS; and the U.S. Department of Commerce, NOAA."). The MOA expressly states that the State of Hawaii has primary responsibility for managing the State waters of the PMNM, in coordination and cooperation with its Co-Trustees. Id. at 2. Thus, while the State of Hawaii, pursuant to the MSA, could not issue any fishing permits that would conflict with the federal regulations governing the federal waters within the PMNM once those regulations were issued, it retained jurisdiction and management authority over the State waters and lands within the PMNM. As such, Plaintiffs cannot show that NOAA's implementation

35

of Proclamation 8031 negligently diminished the jurisdiction of the State of Hawaii.

Plaintiffs nevertheless argue that the State of Hawaii's jurisdiction was diminished because they could fish on their state permits in the PMNM waters prior to the issuance of Proclamation 8031, and could no longer do so once the Proclamation issued. This argument is unavailing, however, because the State of Hawaii stopped permitting all commercial fishing in the State waters within the PMNM in 2005 when it designated the Northwestern Hawaiian Islands Marine Refuge. See Haw. Admin. R. § 13-60.5-4 (making it unlawful for any person to "take for the purpose of sale or sell marine life taken from" the Northwestern Hawaiian Islands Marine Refuge). Indeed, in establishing the Northwestern Hawaiian Islands Marine Refuge and prohibiting commercial fishing within its bounds, the State of Hawaii specifically stated that it intended to "coordinate management and process permit review among" the relevant state and federal agencies, including the U.S. Fish and Wildlife Service and NOAA, as well as "[t]o be consistent with federal law where federal law is applicable." Haw. Admin. R. § 13-60.5-1(6)-(7). As such, it appears that Plaintiffs could not fish in the state waters within the PMNM on their state permits after 2005 because the State of Hawaii had terminated their fishing rights, not because of the issuance of Proclamation 8031. Apparently,

36

Plaintiffs could still fish on state permits in the federal (EEZ) waters within the PMNM even after 2005; however, once Proclamation 8031 was issued in 2006, Plaintiffs could no longer do so.

In sum, because Plaintiffs have failed to demonstrate directly or by analogy that a private person would be liable in Hawaii under the circumstances alleged in the Second Amended Complaint, the Court must conclude that, even assuming Plaintiffs properly exhausted their administrative remedies as to their FTCA negligence claims, the Court nevertheless lacks subject matter jurisdiction over those claims. Plaintiffs claims for negligent failure to follow regulations specifically prescribing NOAA's duties, and negligent performance of an operational task are therefore DISMISSED WITHOUT PREJUDICE.

## B.  Intentional Infliction of Emotional Distress Claim

NOAA argues that Plaintiffs have not exhausted their administrative remedies as to their claim for intentional infliction fo emotional distress. (Mot. at 11-12.) NOAA submits as evidence the two Form 95 administrative claims submitted by Plaintiffs on January 7, 2011, both of which complain only of "economic damages." (Mot. Exs. A & B.)

As this Court noted in its May 31, 2013 Order Granting Defendants' Motion to Dismiss, Plaintiffs' administrative claim forms make no mention of emotional distress and seek no damages

for emotional harm. (See Mot. Exs. A & B.) Nor do they mention the threats of arrest or the allegedly misleading statements made by NOAA officials which apparently form the basis for Plaintiffs' emotional distress claim. (See id.) Plaintiffs do not dispute this. Further, Plaintiffs' Second Amended Complaint contains no new allegations indicating that they presented a claim for emotional distress to NOAA. Plaintiffs have thus failed to exhaust their administrative remedies as to this claim.

Plaintiffs' claim for intentional infliction of emotional distress is therefore DISMISSED WITH PREJUDICE because Plaintiffs failed to exhaust their administrative remedies.

## II. <u>Claims Under the Administrative Procedure Act</u>

Plaintiffs bring two claims under the Administrative Procedure Act ("APA"): (1) arbitrary and capricious abuse of administrative discretion under Proclamation 8031 and the Consolidated Appropriations Act, and (2) a procedural violation in the adoption of regulations pursuant to 8031. (SAC ¶¶ 9–10.) Under the APA, 5 U.S.C. §§ 701 <u>et seq.</u>, a court may (1) "compel agency action unlawfully withheld or unreasonably delayed" and (2) "hold unlawful and set aside agency action[s] . . . found to be," *inter alia*, "arbitrary, capricious, and abuse of discretion," "in excess of statutory jurisdiction," or "without observance of procedure required by law." <u>Id.</u> § 706.

### A. <u>Arbitrary & Capricious Abuse of Administrative Discretion</u>

Plaintiffs' first APA claim is premised upon "NOAA's arbitrary and capricious abuse of administrative discretion pursuant to Proclamation 8031 and the Consolidated Appropriations Act of 2008." (SAC ¶ 9.)

First, as to Proclamation 8031, Plaintiffs allege that NOAA repeatedly changed its mind as to whether Dettling was allowed to fish in PMNM waters after Proclamation 8031 was issued, repeatedly threatened to have Dettling arrested if he fished in the PMNM without a federal permit, refused to allow Cabos to fish in the PMNM with his federal PRIA lobster fishing permit, and ultimately failed to issue Dettling or Cabos a permit to fish in the PMNM. (SAC ¶¶ 12-15, 30-32, 46-49, 60.)

As this Court stated in its May 31, 2013 Order, however, Proclamation 8031 clearly states that federal lobster fishing permits "shall be subject to a zero annual harvest limit," and that fishing for "bottomfish and associated pelagic species" may continue in PMNM waters "provided that . . . [t]he fishing is conducted in accordance with a valid commercial bottomfish permit issued by NOAA [that] is in effect on the date of this proclamation." 71 Fed. Reg. at 36,447. Plaintiffs admit that they did not have federal fishing permits for the PMNM waters on the date that Proclamation 8031 was issued. (SAC ¶ 26.) At the time Proclamation 8031 was issued, NOAA had issued 8 federal bottomfish permits and 15 federal lobster permits for the

39

PMNM waters, none of which Plaintiffs held. (See Mot. Ex. 1 (74 Fed. Reg. 47119, 47120 (Sept. 15, 2009)).) Plaintiffs claim that they should have been issued federal permits, but do not support this claim with any factual evidence. It is clear from the record that Plaintiffs did not have federal fishing permits for the PMNM waters at the time Proclamation 8031 was issued. As such, Plaintiffs have failed to plead facts showing that they were entitled to fish in PMNM waters, and, thus, cannot show that NOAA abused its discretion in its implementation of Proclamation 8031.

     As to the Consolidated Appropriations Act, Plaintiffs allege that NOAA compensated other fishermen under the Act, but did not compensate Plaintiffs, notwithstanding their alleged eligibility. (See SAC ¶¶ 76-78.) The Consolidated Appropriations Act defines eligible participants as "those individuals holding commercial Federal fishing permits for either lobster or bottomfish in the designated waters within" the PMNM. Consolidated Appropriations Act of 2008, Pub. L. No. 110-161, 121 Stat. 1844. Plaintiffs conclusorily assert that they were eligible for federal compensation. (E.g., SAC ¶ 77.) Nevertheless, as the Court stated in its May 31, 2013 Order, the Court is not required to credit legal conclusions in a complaint that are not supported by the complaint's factual allegations. Iqbal, 556 U.S. at 678 (discussing Twombly, 550 U.S. at 555). Plaintiffs do not plead that they held federal fishing permits

for the PMNM waters on the date the Consolidated Appropriations
Act was enacted (which they would have had to have prior to the
issuance of Proclamation 8031 in 2006); rather, they plead that
NOAA had not issued any federal fishing permits for the PMNM at
that time. (SAC ¶ 26.) In other words, the facts that they plead
appear to show that they were <u>not</u> eligible for compensation under
the Consolidated Appropriations Act. As such, Plaintiffs have
failed to plead a claim that they were wrongfully denied
compensation under the Consolidated Appropriations Act.

Plaintiffs' first APA claim is therefore DISMISSED
WITHOUT PREJUDICE.

**B.    APA Claim for "Procedural Violations"**

Plaintiffs' second APA claim is "premised upon NOAA's
procedural violations in the adoption of its regulations or other
agency action pursuant to Proclamation 8031." (SAC ¶ 10.) As was
the case with Plaintiffs' prior complaint, however, the rest of
the Second Amended Complaint contains no factual allegations
relating to NOAA's adoption of regulations and no facts that
would explain what procedural rules NOAA allegedly violated, or
when or how NOAA violated those rules. This claim is therefore
DISMISSED WITHOUT PREJUDICE.

**C.    Plaintiffs' Compensation Claim and the Tucker Act**

In addition to seeking recovery for NOAA's alleged
"tortious and/or arbitrary and capricious" actions, Plaintiffs

41

seek compensation for the loss of their traditional fishing grounds. (SAC at "Prayer for Relief" (n.p.).) NOAA argues that Plaintiffs' claims for compensation should be dismissed because they are Tucker Act claims seeking money damages and therefore this Court does not have jurisdiction over them. (Mot. at 26-29.) Plaintiffs counter that they are not raising Tucker Act claims, but APA claims that are appropriate because they do not seek monetary damages, but, rather seek specific relief – namely, "to compel compensation wrongfully withheld or unreasonably delayed pursuant to the [Consolidated Appropriations Act.]" (Opp'n at 28-30.)

### 1.   Jurisdiction Under the APA

The APA provides subject matter jurisdiction only over claims seeking relief "other than money damages." 5 U.S.C. § 702; Tucson Airport Auth. v. General Dynamics Corp., 136 F.3d 641, 645 (9th Cir. 1998) ("By its own terms, [the APA] does not apply to claims for 'money damages'[.]"). Plaintiffs correctly point out, however, that not all claims for relief that may require one party to pay money to another party are considered claims for "money damages" for purposes of the APA. See Bowen v. Massachusetts, 487 U.S. 897, 893-94 (1988). Rather, in some circumstances, an equitable action for specific relief may include an order providing for the recovery of money wrongfully withheld. See id. at 893. As such, the fact that Plaintiffs' make

claims for money does not, in itself, preclude their purported APA claims.

Nevertheless, in their Second Amended Complaint Plaintiffs ask for the following relief: that "Plaintiff Dettling be compensated for the loss of his fishing rights [in the PMNM,]" "Plaintiff Dettling be compensated for damages resulting from NOAA's tortious and/or arbitrary and capiricous refusal to give Dettling a federal permit to fish in the [PMNM,]" "Plaintiff Cabos be compensated for the loss of his fishing rights [in the PMNM,]" and "Plaintiff Cabos be compensated for the loss of his lobster fishing rights in the [PRIA Monument.]" (SAC at "Prayer for Relief" (n.p.).) Thus, based on the plain language of the Second Amended Complaint, and notwithstanding Plaintiffs' argument to the contrary in their Opposition, Plaintiffs appear to be seeking compensatory monetary damages, rather than equitable relief in the form of specific performance. As such, to the extent Plaintiffs attempt to base their claim for compensation under the Consolidated Appropriations Act upon the APA, this Court lacks subject matter jurisdiction over that claim.

### 2. Jurisdiction Under the Tucker Act

Having found that this Court lacks subject matter jurisdiction over Plaintiffs' claims for compensation under the APA, the Court now addresses whether it nevertheless has

jurisdiction over those claims under the Tucker Act.
Notwithstanding the fact that Plaintiffs state in their
opposition that they do not attempt to bring any Tucker Act
claims, Plaintiffs include in their Second Amended Complaint the
following statement: "If the Tucker Act precludes claims over
$10,000.00 being heard by this court under the APA, Plaintiffs
expressly waive damages in excess of $10,000 for their APA
claims." (SAC ¶¶ 9-10.) This appears to be Plaintiffs' attempt to
address the Court's instruction in its May 31, 2013 Order that
Plaintiffs address the Court's Tucker Act analysis in drafting
any future amended complaint. (Doc. No. 68, at 28.)

       The Tucker Act gives the Court of Federal Claims
exclusive jurisdiction for claims over $10,000 "founded either
upon the Constitution, or any Act of Congress or any regulation
of an executive department, or upon any express or implied
contract with the United States, or for liquidated or
unliquidated damages in cases not sounding in tort." 28 U.S.C.
§ 1491. The district courts have concurrent jurisdiction with the
Court of Federal Claims over Tucker Act claims seeking less than
$10,000. 28 U.S.C. § 1346(a)(2).[18]

---

       [18] If a Tucker Act claim is brought in district court for an
amount over $10,000, the court may dismiss the claim for lack of
subject matter jurisdiction or transfer the claim to the Court of
Federal Claims; if the plaintiff wishes to remain in district
court, he must waive his damages in excess of $10,000, as
Plaintiffs appear to attempt to do in their Second Amended
Complaint. (SAC ¶¶ 9-10). See also, e.g., Waters v. Rumsfeld, 320

The Tucker Act "does not create any substantive right enforceable against the United States for money damages." United States v. Mitchell, 463 U.S. 206, 216 (1983). A substantive right must be found in some other source, such as "the Constitution, or any Act of Congress, or any regulation of an executive department," id. (quoting 28 U.S.C. § 1491), and the claimant must "demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.'" Mitchell, 463 U.S. at 216-17 (quoting United States v. Testan, 424 U.S. at 400).

In this case, as this Court noted in its May 31, 2013 Order, Plaintiffs' claim for compensation under the Consolidated Appropriations Act appears to fall under the Tucker Act. Appropriations act provisions like the one at issue here have been found to be money-mandating, so as to create a Tucker Act claim. See, e.g., Wolfchild v. United States, 96 Fed. Cl. 302, 338 (Fed. Cl. 2010). The Federal Circuit has "repeatedly recognized that the use of the word 'shall' generally makes a statute money-mandating." Greenlee Cnty. v. United States, 487 F.3d 871, 877 (Fed. Cir. 2007). Here, the Consolidated Appropriations Act provision reads "The Secretary [of Commerce] shall promulgate regulations [that] provide[] a mechanism to

_____

F.3d 265, 271 (D.C. Cir. 2003).

compensate eligible participants for no more than the economic value of their permits." Pub. L. No. 110-161, 121 Stat. 1844, at 1893 (emphasis added). Thus, the Consolidated Appropriations Act appears to be a money-mandating statute under the meaning of the Tucker Act jurisdictional analysis. Because Plaintiffs have expressly waived any damages in excess of $10,000, (SAC ¶¶ 9-10), it would appear this Court has jurisdiction pursuant to the Tucker Act over Plaintiffs' claims for compensation under the Consolidated Appropriations Act.

Importantly, however, "to fall within the Tucker Act's waiver of sovereign immunity, the plaintiff must sue for money the Government improperly exacted or retained, or the plaintiff 'must identify a separate source of substantive law that creates the right to money damages.'" Matsuo v. United States, 416 F. Supp. 2d 982, 989 (quoting Fisher v. United States, 402 F.3d 1167 (Fed. Cir. 2005)). As such, Plaintiffs must not only identify the substantive law that creates a right to money damages – here, the Consolidated Appropriations Act – but Plaintiffs must also allege "that the particular provision of law relied upon grants [them], expressly or by implication, a right to be paid a certain sum." Id.

Here, Plaintiffs have failed to make a showing that they had a right to be compensated under the Consolidated Appropriations Act. As discussed above and in this Court's May

46

31, 2013 Order, the Consolidated Appropriations Act defines eligible participants as "those individuals holding commercial Federal fishing permits for either lobster or bottomfish in the designated waters within" the PMNM. Pub. L. No. 110-161, 121 Stat. 1844, at 1893. Plaintiffs conclusorily assert that they were eligible for federal compensation, but do not support this assertion with any relevant facts. (E.g., SAC ¶ 77.) In fact, Plaintiffs state in their Second Amended Complaint that NOAA had not issued any federal fishing permits for the PMNM waters on the date the Consolidated Appropriations Act was enacted. (SAC ¶ 26.) Plaintiffs do allege that "Cabos had a Federal lobster fishing permit to fish in the designated waters within the [PMNM,]" (SAC ¶ 66); however, Plaintiffs have not substantiated this claim with any evidence, and NOAA has introduced evidence that Cabos was not issued and did not possess a commercial federal lobster fishing permit in 2006, or anytime thereafter, for the waters that were designated as the PMNM. (Tosatto Decl. ¶¶ 4-6.) The parties agree that Cabos did have two federal lobster permits for the PRIA Monument waters for fishing years 2007-08 and 2008-09; however, the PRIA Monument is not within the boundaries of the PMNM.

Because Plaintiffs have failed to demonstrate that they ever held commercial federal fishing permits for the PMNM, they have not shown that they were entitled to receive benefits under the Consolidated Appropriations Act. As such, this Court lacks

47

subject matter jurisdiction over Plaintiffs' claims to the extent they are brought under the Tucker Act.[19] Plaintiffs' claims for compensation pursuant to the Consolidated Appropriations Act are therefore DISMISSED WITHOUT PREJUDICE.

### CONCLUSION

For the foregoing reasons, the Court DISMISSES Plaintiffs' Second Amended Complaint in its entirety.[20]

First, the Court DISMISSES WITHOUT PREJUDICE Plaintiffs' FTCA claims based on NOAA's alleged negligent failure to follow regulations that specifically prescribed its duties pursuant to Proclamation 8031 and the Consolidated Appropriations Act, and negligent performance of an operational task mandated by Proclamation 8031 and the Consolidated Appropriations Act. Plaintiffs have failed to exhaust their administrative remedies as to these claims, and this Court lacks subject matter jurisdiction over these claims because they do not fall within the FTCA's waiver of sovereign immunity.

---

[19] In an abundance of caution, the Court has discussed Plaintiffs' Tucker Act claim set forth in their Second Amended Complaint, notwithstanding the fact that they appear to have withdrawn this claim in their Opposition.

[20] The Court notes that NOAA admitted at the hearing that, prior to 2006, both Plaintiffs had general marine permits issued by the State of Hawaii for all types of fishing within the general area of the PMNM; yet neither Dettling nor Cabos received any compensation from the State of Hawaii or the federal Defendants for the loss of their fishing grounds. The Court finds this troubling; however, the Plaintiffs have failed to establish any legal right to compensation.

Second, the Court DISMISSES WITH PREJUDICE Plaintiffs' claim of intentional infliction of emotional distress. Plaintiffs have failed to exhaust their administrative remedies as to this claim.

Third, the Court DISMISSES WITHOUT PREJUDICE Plaintiffs' APA claims based on NOAA's alleged arbitrary and capricious abuse of administrative discretion in implementing Proclamation 8031 and the Consolidated Appropriations Act, and procedural violations in the adoption of Proclamation 8031. Plaintiffs have failed to present factual allegations sufficient to show that Plaintiffs were entitled to fish in the Papahanaumokuakea Marine National Monument area under the terms of Proclamation 8031, or that they were entitled to compensation under the Consolidated Appropriations Act.

Fourth and finally, the Court DISMISSES WITHOUT PREJUDICE any remaining claims Plaintiffs make for compensation under the Consolidated Appropriations Act of 2008. This Court lacks jurisdiction to address those claims under the Administrative Procedure Act, and Plaintiffs have failed to demonstrate that they had a right to compensation under the Consolidated Appropriations Act such that this Court may exercise jurisdiction over those claims pursuant to the Tucker Act.

Plaintiffs must file any further amended complaint within thirty days, or else judgment will be entered against them

and this action will be closed. The Court notes that Plaintiffs have now had two opportunities to amend their complaint. Any further amended complaint must correct all the deficiencies noted in this Order, or Plaintiffs' claims will be dismissed with prejudice.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 15, 2013



_____
Alan C. Kay
Sr. United States District Judge


Dettling et al. v. United States et al., Civ. No. 11-00374 ACK KSC, Order Granting Defendants' Amended Motion to Dismiss